state facts sufficient to constitute a cause of action. The answer to this argument is obvious. The complaint does not attempt to allege a statutory cause of action under a New Jersey statute, nor one for violation of the charter or by-laws of the corporation. The offenses set forth are such at common law, and the common law of New Jersey is presumed, in the absence of proof to the contrary, to be the same as that of this state, and need not be pleaded or proved.

The demurrers are overruled, with $10 costs, with leave to the defendant to withdraw them and serve an answer within 20 days after service of notice of entry of an order herein upon payment of said costs.

Demurrer overruled, with $10 costs, with leave to withdraw and serve answer within 20 days.

Demurrer overruled.

(164 App. Div. 45)

## In re WILLIAM B. DANA CO.

(Supreme Court, Appellate Division, Second Department. October 16, 1914.)

1. TAXATION (§ 879*)—SUCCESSION TAXES—PROPERTY LIABLE.

Under Tax Law (Consol. Laws, c. 60) § 220, as amended by Laws 1911, c. 732, § 1, providing for the imposition of a tax upon the transfer of any property by gift, intended to take effect in possession after the donor's death, a donee of a one-half interest in a stock certificate, issued to the donor, the donee, and the survivor of them, is liable for succession taxes, where the income from all the shares represented by the certificate was reserved by the donor during life, and he also reserved power to revoke the donee's interest.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. § 879.*]

2. TAXATION (§ 866*)—TRANSFER TAXES—JOINT TENANCIES.

While a joint tenant is liable for succession taxes, where the tenancy is created by gift, and his rights to the property do not ripen until the death of the donor, the rule is otherwise where a joint tenancy is created by contract; in that case the rights of the parties being fixed by the contract, and not derived from the death of either.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 866.*]

Thomas, J., dissenting.

Appeal from Surrogate's Court, Suffolk County.

In the matter of the appraisal under the Transfer Tax Law of a half interest in 620 shares of stock in the William B. Dana Company. From an order of the surrogate assessing succession taxes against Jacob Seibert, Jr., he appeals. Affirmed.

Argued before BURR, THOMAS, CARR, RICH, and STAPLETON, JJ.

Winthrop E. Dwight, of New York City, for appellant.

John S. Jenkins, of New York City (Henry A. Miller, of New York City, on the brief), for respondent.

PER CURIAM. This is an appeal from an order of the Surrogate's Court of Suffolk County, which fixed a transfer tax upon the

succession of Jacob Seibert, Jr., to the ownership of certain shares of stock in the William B. Dana Company, upon the death of William B. Dana. Dana was the president of the corporation. In June, 1894, a resolution was· adopted by the directors of the corporation, providing that the entire net income of the corporation should be paid to Dana as long as certain bonds of the company remained unpaid, "not exceeding the term for which the said bonds have been executed." In April, 1905, a new resolution was adopted, that the entire net income of "this company shall until the death of William B. Dana be paid to said William B. Dana as compensation for his services to the company." This resolution continued in force until Dana's death. In March, 1905, Dana had a new certificate issued to him for 620 shares of stock, taken out of a block of stock owned by himself, which certificate was issued in form as follows: "William B. Dana and Jacob Seibert, Jr., *and the survivor.*"

[1] Under Tax Law, § 220:

"A tax shall be and is hereby imposed upon the transfer of any tangible property within the state * * * or of *any interest therein* or income therefrom, * * * to persons * * *

"4. When the transfer is of intangible property, or of tangible property within the state, * * * by deed, grant, bargain, sale or *gift* * * * intended to take effect *in possession or enjoyment at or after such death*" (that is, after the death of the donor).

"5. When any such person * * * becomes beneficially entitled, in possession or expectancy, to any property or the income thereof by any *such* transfer whether made before or after the passage of this chapter."

This charge, for convenience called a tax, is upon *the right of succession, not upon property.* Matter of Moses, 138 App. Div. 525, 123 N. Y. Supp. 443; Matter of Gihon, 169 N. Y. 443, 62 N. E. 561; Matter of White, 208 N. Y. 64, 101 N. E. 793, 46 L. R. A. (N. S.) 714.

Two things are present in this case: First, the interest of Seibert in the stock of the William B. Dana Company was by gift from Dana; and, second, such gift was only "intended to take effect in" complete "possession or enjoyment at or after such death"; that is, the death of the donor. It is true that there is some evidence that the inducing cause of the gift was services which Seibert had rendered to the William B. Dana Company in the past and might be induced to render in the future, in the hope of ultimately becoming the owner of the stock. But when the agreement for transfer is considered in connection with the nearly contemporaneous agreements, one preceding and the other shortly succeeding the gift of the stock, with regard to the dividends thereon, the right reserved to Dana to revoke and annul any interest of Seibert therein, and the failure of Seibert to obligate himself to remain in the employ of the company until Dana's death, we think that the relation of the parties was that of donor and donee, and not a contractual relation for a valuable consideration.

We do not think it is necessary to determine exactly the character of title or ownership as between themselves of joint owners of personal property, nor whether this was a gift inter vivos nor whether it was made in contemplation of death. It might have been the former,

and not the latter, and still the ultimate succession be taxable. Christie on Inheritance Taxation, 697. Certainly, while Dana lived, the gift by him to Seibert of this stock did not take effect in complete possession or enjoyment, nor was it intended that it should. The intention was that such gift should take such effect only after Dana's death and by reason thereof. When the stock was transferred, Seibert may have become "beneficially entitled in expectancy" to such property, provided he survived Dana, but not otherwise, and it was Dana's intent that he should thus become entitled, and only to that extent. It was such gift, and such only, that Dana made to him. Seibert's "right of succession," therefore, became effective when Dana died, and not before. A father in robust health may make a gift to his son of property, reserving to himself a life interest therein. This would be a gift to take effect in enjoyment after the father's death, and would be a taxable transfer. In re Green, 153 N. Y. 223, 47 N. E. 292.

[2] The suggestion which has been made that if we hold this transfer taxable we would have to hold the same as to all joint tenancies in personal property, or the further suggestion that if Seibert's interest in this stock becomes taxable upon Dana's death, if Seibert had died first, a like interest passing to Dana would have then been subject to taxation, is not correct. The latter could not be so, because Dana did not acquire his interest in the stock by "gift" from Seibert, whereas Seibert *did* acquire his interest therein by "gift" from Dana. The distinction between a joint tenancy thus created in personal property, and a joint tenancy otherwise arising, is clearly pointed out by Fowler, Surrogate, in Re Heister, 85 Misc. Rep. 271, 147 N. Y. Supp. 557. In the Heiser Case, Surrogate Fowler said:

"Joint ownership of personal property is recognized by the law of this state. Matter of Kaupper, 141 App. Div. 54 [125 N. Y. Supp. 878]; Kelly v. Beers, 194 N. Y. 49 [86 N. E. 980, 128 Am. St. Rep. 543]. The right of the survivor to the entire property held by them as joint tenants is the distinguishing characteristic of this species of ownership, *and if all the property held jointly belonged originally* to one of the parties, and the rights of a joint owner were conferred by the original owner upon his joint tenant as a gift intended to take effect at or after death, the value of the interest passing to the survivor would be subject to the provisions of the Transfer Tax Law [Consol. Laws, c. 60, §§ 220–245].   *   *   *   But if the joint tenants have contributed out of their individual funds to the purchase of the property held by them as joint tenants, *the right of the survivor to take the entire property is not a gift from the other joint tenant, but a right derived from the contract entered into between them at the time the instrument creating the joint tenancy was executed.*"

The order of the Surrogate's Court of Suffolk County should be affirmed, with $10 costs and disbursements.

THOMAS, J. (dissenting). Dana owned corporate stock and caused a certificate of some part of it to be issued to himself and Seibert and the survivor. Seibert is the survivor, and it is purposed to lay a succession tax upon the entire property. Dana declared to the officiating lawyer that he made the transfer to compensate Seibert for services rendered and to be rendered by Seibert, and that the latter had agreed to accept the stock in accordance with his wishes. Seibert testifies in

effect that he agreed to render the services. Here, then, is an offer, an acceptance, and adequate consideration. Hence there is a contract. And yet it is adjudged a gift of property so devolving at the donor's death as to demand taxation. I find in the convention no features of the gift contemplated by the statute. Dana deemed that he owed for the past; he wished to obligate Seibert for the future. To that end he promised, and Seibert accepted. The contract is marked with good faith; it has abundant pecuniary consideration; it went into effect at once. Governments do not lay succession or death taxes on such financial dealings. Seibert paid for what he got. He is taxed as if he had received a gratuity.

Would the property be taxable if Seibert had paid a sum of money to Dana as a consideration for the service? I think not. But agreement to serve is an equivalent. The case is quite removed from the policy and theory on which death taxes are imposed. But if Seibert, laboring long and promising to continue his responsible service under the inducement of the compensating transfer, is after all a mere donee, who has taken all and given nothing in consideration, even then the stock in its entirety should not be taxed. At the most only Dana's interest, to which Seibert succeeded on Dana's death, is taxable. A consideration of the nature of the contract shows that to be true. The estate was held either jointly or in common, with cross-contingent remainders. If the tenancy was joint, it would have become a tenancy in common had Seibert alienated his interest. 4 Kent's Com. 363, 364.

Seibert and Dana each had an interest that could be alienated. Each could exercise every reasonable act of ownership. 4 Kent's Com. 359. If the estate was productive, one could compel the other to account, and could maintain an action against him for the profits received. Code of Civil Procedure, § 1666. Either could have partition of the property. Code of Civil Procedure, § 1532. Each had, while both were living: (1) An interest vested fully in right and enjoyment, but defeasible if he did not survive; (2) a remainder vesting upon his surviving his cotenant. In other words, each had his own, which in fact, if not in theory, was an undivided one-half of the property. Each had also a contingent remainder in the other's share. The first named interest became fully effective when the transfer was made, and was not taxable. The second named interest became effective for Seibert at Dana's death and may be taxable. But Seibert's other interest or estate did not take effect at Dana's death. At the time of the transfer it had all the necessary qualities of an estate of inheritance. True, there was attached a subsequent condition that might defeat it. That ceased at Dana's death, and before that event menaced Seibert's vested interest with possible defeasance. It was operative, as an executory devise or limitation in a fee would be effective. It vanished at Dana's death, but its disappearance did not create or augment in quantity the estate in Seibert.

Some illustrations will serve. If the transfer had been to Seibert upon the condition that, if he should die without issue, it would go to Dana, and if Seibert died leaving issue, his estate would not in any

sense take effect by his so dying. Again, assume a transfer to Seibert with a provision that if Dana left issue they should take, Seibert's estate would not await before vesting Dana's death without issue. A grant to an infant, with a provision that if he died under the age of 21 another should take, does not await his majority to vest. Nor does a grant to living persons as a class fail to vest by reason of a provision that, if one of the class die before the grantee, the other shall take his share. An estate on condition may cease upon a given happening. A limitation may make the continuance of an estate precarious. But the extinguishment of the peril does not make the estate exist either in right or enjoyment. So Seibert had an estate which might live forever. It might go to Dana if he survived Seibert. But it existed by virtue of the transfer, and at the time of the transfer, and was so intended. But the contingent remainder became effective in enjoyment at Dana's death, and, while I doubt, yet it may be that such remainder, if it be a gift, falls under the statute. But the present remainder was not given. It was earned under an agreement.

The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.