STATE OF VERMONT *v.* ESTHER M. PARMELEE.

(63 A2d 203)

Special Term at Rutland, November, 1948.

Present: MOULTON, C. J., BUTTLES, JEFFORDS and CLEARY, JJ.

Opinion filed January 5, 1949.

430

*Clifton G. Parker,* Attorney General, for the State.

*Norton Barber* and *Lawrence & O'Brien* for the defendant.

JEFFORDS, J.  This is a suit in chancery brought by the commissioner of taxes in the name of the state under the provisions of Secs. 1103 to 1106 of the Public Laws, now Secs. 1108 to 1110 of the Vermont Statutes, revision of 1947, for the recovery of taxes alleged to be due the state under P. L. Sec. 1050, now section 1055 of the revision.  A hearing was had and findings of facts were made based upon allegations in the bill of complaint and answer which by stipulation were to be treated as facts.  The findings as far as here material are as follows:

In July, 1933, Robert M. Parmelee and his wife, Esther M. Parmelee, established an account with the Irving Trust Co. of New York.  At that time and until his death in 1942 Mr. Parmelee was a resident of Bennington in this state.  All of the money and securities placed in the account were furnished by Mr. Parmelee and the defendant contributed nothing thereto.  The account which was set up by correspondence between the parties thereto is set forth in the findings.  This account, called a joint custodian account, gave rather broad powers to the Trust Company.  Its provisions here material are that all securities or other property deposited in the account should be the joint property of the Parmelees and upon the death of one, the ownership of the corpus of the account should vest absolutely in the survivor, "it being the intent that the interest of the deceased in said securities or other property shall terminate with his (or her) decease."  Each of the Parmelees had the right by withdrawal to take any part or all of the account.  During the remainder of Robert's life both he and his wife had access to and drew upon the account and she participated equally with him in all directions to the Trust Company concerning the account and the securities contained therein.

In addition to the cash and securities which he placed in the custodian account Robert owned certain shares of stock which he caused to be transferred to "Robert M. Parmelee and Esther M.

Parmelee, as joint tenants with right of survivorship and not as tenants in common." New certificates were issued accordingly which were placed in a safety deposit box to which both the Parmelees had access. From the time of this transfer, dividends, up to Robert's death, were paid in the form just above quoted.

The property in the custodian account and the shares of stock above referred to were not included in the estate of Robert when it was administered in the probate court for the district of Bennington.

The chancellor in his findings set forth the New York statute relating to bank deposits payable to either or the survivor and providing that such deposits shall become the property of such persons as joint tenants, etc. It was found that the accounts and agreements which the Parmelees and the Trust Company had in respect to all the property held by the latter for the former were continued in force with knowledge that this statute had been enacted.

The chancellor also found that the law of New York since July 1, 1933, had been and now is, in regard to the creation of a joint tenancy in custodian accounts which contain money and securities, as set forth in the cases of *In re Tilley's Estate,* 166 App Div 240, 151 NYS 79, affirmed without opinion in 215 NY 702, 109 NE 1094; *In re Dalsimer's Estate,* 167 App. Div. 365, 153 NYS 58, and *in re Thompson's Estate,* 167 App Div 356, 153 NYS 164, affirmed without opinion in 217 NY 609, 111 NE 1101.

The findings continue in substance as follows:

At the time the custodian account was created and at the time it was modified it was the intention of both of the Parmelees to create a joint tenancy account with the right of survivorship in either of them. It was the intention of Robert when he supplied the monies and securities which were placed in the account to create a joint tenancy therein with the right of survivorship in either himself or his wife, with all the rights and privileges to both as to possession or enjoyment including the right of survivorship in either incident to a joint tenancy in the account.

At the time of the transfers of the stock above referred to it was the intention of Robert to create a joint tenancy therein in the names of himself or his wife, and with all the rights and privileges to him and to her as to possession or enjoyment, including right of survivorship in either incident to a joint tenancy in the same.

A decree was entered holding in substance that the transfer of

cash and securities in the custodian account constituted a transfer of property for which no full consideration in money or money's worth was paid and that such transfer was made and intended to take effect both in possession and enjoyment upon and after the death of the donor, Robert.

The decree also held that the transfers of stock herein referred to constituted transfers of property for which no such consideration was paid and that such transfers were neither made or intended to take effect in possession or enjoyment upon or after the death of Robert and therefore are not taxable.

The amount of tax due on the transfer of the corpus in the custodian account was set forth in the decree and it was ordered that it be paid with interest into the state treasury. The tax as computed was made a lien on the property in the account and it was stated that an injunction order shall issue forthwith restraining the defendant, her agents, etc. from disposing of such property until the tax had been paid.

Both plaintiff and defendant took exceptions to the decree and the case is here only on such exceptions. Thus the only question for us to determine is whether the decree is warranted by the pleadings and supported by the findings. *Burlington B. & L. Ass'n.* v. *Cummings,* 111 Vt 447, 452, and cas. cit., 17 A2d 319.

The basis for the claim of the plaintiff for recovery of the taxes in question is to be found in P. L. Sec. 1050 which reads as follows:

"Each person in a class liable to a tax under the first and second preceding sections (which have to do with the taxation of collateral and direct inheritances) who acquires title to real estate within this state or any interest therein by deed, grant or gift, except in case of a bona fide purchase for a full consideration in money or money's worth, made or intended to take effect in possession or enjoyment upon or after the death of the grantor or donor, and every such person who thus acquires title to personal estate or any interest therein from a deceased person who at the date of his death was an inhabitant of this state and then owned such property, shall pay to the state the same tax that he would have been required to pay had such estate or interest passed to him from such deceased person by will, the laws of descent or decree of a court in this state. Such tax shall be a first lien on the real or personal estate thus conveyed, until paid in full."

█ The tax therein provided for is not a tax on the property itself, but upon the right of succession to the property. *In re Fulham's Estate,* 96 Vt 308, 313, 119 A 433.

From the findings it appears that Mrs. Parmelee is such a person as is referred to in the statute; that there was not such a purchase as therein described and that Mr. Parmelee was, at the time of his death, an inhabitant of this state. None of these facts are in issue. In considering the controversial questions we will take them in the order presented in the brief of the defendant.

█ The defendant concedes that the weight of authority is to the effect that the situs of the corpus in the custodian account is here for the purpose of taxation. This concession does not harm the defendant as it is the law of this state and, it seems, of all jurisdictions that the right of succession to intangible property is taxable in the state wherein the owner was domiciled at the time of his death. *Re Fulham's Estate, supra; In re Howard's Estate,* 80 Vt 489, 68 A 513. For cases other than our own see Ann. 42 ALR at p. 330 and Ann. 86 ALR at p. 742.

However, the defendant claims that inasmuch as the corpus of the custodian account was located at all times here material in New York the law of that state must govern as to the title of the Parmelees in the account and to the securities therein contained, including the type of tenancy created therein. She bases this claim on two grounds. The first is that the law of New York must govern in the respects claimed as the situs of the property was there. The second is that such law must be controlling because it was in that state that the contract relating to the custodian account was made.

In pressing her claim based on the situs of the property, the defendant does not go so far as to claim that it had acquired a business situs in New York and it does not seem that the facts would justify any such claim. But this matter of business situs would only be important on the question of whether that state could tax the property, a question entirely foreign to any matter here in issue.

█ The defendant cites many cases in support of her position that the law of New York should govern in the construction of the custodian account agreement and the results following from such construction. We do not question the law laid down in those cases but they nearly all relate to title or kindred matters and none of

them touch the question here involved. We have here a situation where, beyond question, this state has the authority and power to levy a tax on the right of succession to intangibles owned by a deceased resident. The question of whether this power and authority can be exercised in a given case is to be determined by our law and none other. *Nickel* v. *State,* 43 Nev 12, 177 P 409, 185 P 565, affirmed 256 US 222, 41 S Ct 467, 65 L Ed 900; *In re Cummings Estate,* 142 App Div 377, 127 NYS 109; *In re Majot's Estate,* 135 App Div 409, 119 NYS 888; *Blackstone* v. *Miller,* 188 US 189, 23 S Ct 277, 47 L ed at p. 444; 61 CJ 1597.

*Nickel* v. *State, supra,* was a transfer tax case. It is stated in 43 Nev at page 46, 185 P at page 565, that "The legislature of this state has spoken. There can be no question as to its pronounced policy to cover by its inheritance-tax law such foreign transactions as are disclosed by this record, and we decline to look to a foreign jurisdiction for an authority either to uphold the law or to evade its provisions. We are not concerned in the lex loci contractus, if the transfer or devolution of title to the property in question is taxable under our laws."

The defendant takes the position that, even if we should hold that our law governs the question of taxability as to the custodian account, this account did not constitute a taxable transfer. We will now turn our attention to that question.

In our opinion the case of *In re Fulham's Estate, supra,* controls here. In that case Fulham transferred certain securities to a trustee to be held in trust. Under the written agreement creating the trust the donor could at his pleasure have paid back to him any part of the trust fund. On Fulham's death the question was whether the corpus of the trust was subject to a transfer tax under G. L. 1093; later P. L. 1050, *supra.* It was held that it was so taxable. It is stated in the opinion at page 315 that: "As long as he lived, Fulham retained a very real and complete control over the trust fund. He could, at pleasure, recall any part of it, which means, of course, all of it. It is only when the owner relinquishes all power of control over the property and confers upon another the right to dispose of it and receive and use its avails, without subsequent restriction or control by the donor, that the transfer escapes the tax. The property, together with all the attributes of ownership, must pass from the donor, to take effect independently of his

death." Several cases are cited in support of the above quoted statement.

Under this test it is clear that the corpus of the fund in the custodian account was taxable under P. L. sec. 1050. The control retained by Parmelee over that fund was as extensive as that which Fulham retained over the fund which he created. Each could at any time prior to death destroy the fund created by him by withdrawals.

The defendant gives several reasons why, as she claims, the test laid down in the Fulham case does not apply to the custodian account. She quotes from that case the statement that "The policy of such statutes is that the owner of property shall not evade the tax, except by full and effective transfers made during his lifetime." She lays stress on the fact that sec. 1050 by its own terms is aimed at a transfer "made or intended to take effect in possession or enjoyment upon or after the death of the grantor or donor." The defendant cites the findings of the chancellor to the effect that when the custodian account was created it was the intention of the Parmelees to create a joint tenancy account with the right of survivorship and all incidents pertaining to a joint tenancy. She says that these findings show not an attempt at a testamentary disposition of the property but a present gift of a joint interest therein.

One answer to this claimed distinction between the case here and the Fulham case is that it is not therein held that in order to render a transfer taxable it must be testamentary in character. Doubtless the purpose and policy of the statute in question was as stated in that case. But the test laid down in determining whether the transfer there in question was taxable was not whether it was colorable or fictitious or testamentary in character but whether, as heretofore stated, the donor had relinquished all power of control over the fund. In determining the taxability of a transfer it is not material whether it was made in an attempt to evade the law; *Re Orvis,* 223 NY 1, 119 NE 88; *in re Kline's Estate,* 65 Misc. 446, 121 NYS 1090; or whether, under a statute worded as the one here in question, it was made in contemplation of death, i. e. testamentary in character, as the liability to taxation depends solely on the character of the interest transferred. *In re Brandreth's Estate,* 169 NY 437, 62 NE 563, 58 LRA 148.

In support of her claim that the gift by Parmelee to his wife in respect to the custodian account was not in its nature testa-

mentary, a question which, as we have already indicated, it is not here necessary to decide, the defendant cites several cases in support of her position that a present gift was made by the creation of a joint tenancy. On this point it is sufficient to say that granting the Parmelees intended to create a joint tenancy in the account as found by the chancellor, they did not accomplish their purpose. Each had the right to withdraw the entire corpus of the account and thus destroy it without liability to the other. In such a case a true joint tenancy does not exist. *Rice* v. *Bennington Savings Bank,* 93 Vt 493, 503, 108 A 708. At the most the rights in the account were similar to those held by joint tenants. *Burns* v. *Nolette,* 83 NH 489, 144 A 848, 67 ALR 1071; *In re Von Bernuth's Estate,* 143 NYS 672; *Marble* v. *Jackson,* 245 Mass 504, 139 NE 442.

The defendant in support of her claim that the Fulham case is distinguishable from the present case lays much stress on the fact that here Mrs. Parmelee had an equal right to withdraw all of the custodian account and thus her rights were the same in all respects as that of the donor; while in the Fulham case the donor only retained the right of control over the fund.

If the case here involved the question of the title of Mrs. Parmelee to the corpus of the custodian account remaining after the death of Mr. Parmelee by virtue of a gift made at the time the account was created, her equal right to withdraw might be material. See cases pro and con collected in Anns. 48 ALR at p. 199 et seq. and 66 ALR at p. 888 et seq. But as stated in the Fulham case at p. 318, "We are not here concerned with the validity of this gift as between the donor and the donee. We are only called upon to pass upon the taxability of the transfer, assuming its validity." This statement is supported by the cases from other jurisdictions cited on p. 315 in support of the test of taxability. These cases hold, as does the Fulham case, that when title to property has passed from the donor to another with a reservation of some life interest by the former then upon his death such property is subject to a succession or transfer tax.

As heretofore stated, the cases cited by the chancellor in his finding as to the New York law support the defendant's position that the transfer of the custodian account is not taxable. It should be noted however that there are cases in that state which support the view we have taken on that question. See *In re Durfee's Estate,* 79 Misc. 655, 140 NYS 594; *in re Kline's Estate, supra,* and

*In re Von Bernuth's Estate, supra,* which latter case contains an interesting discussion of the question of the taxability of a transfer made with facts similar to those appearing in connection with the custodian account in the present case.

The defendant cites P. L. secs. 6721 and 6722 now secs. 8779 and 8780 of V. S. 1947 rev. and the cases of *Connor* v. *Federal Deposit Ins. Corp.,* 112 Vt 380, 26 A2d 105, and *Patch* v. *Squires,* 105 Vt 405, 165 A 919, which had to do with the construction of these statutes as further indicating that under our law the transaction relating to the custodian account would not be considered a testamentary one. What we have already said in regard to this matter of testamentary disposition makes it unnecessary to discuss this additional claim.

We have now considered all the reasons presented by the defendant in support of her claim that the holding in the Fulham case does not apply to the custodian account. We have seen that none of them are valid and it follows that that part of the decree holding the transfer of the corpus of the account is taxable is without error.

We now turn to the portion of the decree which holds that the transfer of the stocks is not taxable. In discussing this matter we assume that the Parmelees held the stock certificates, as finally issued, as joint tenants in a true joint tenancy. That a joint tenancy may exist in personal as well as real property is well established. *Rice* v. *Bennington Savings Bank, supra; Gilbert* v. *Richards,* 7 Vt 203. As joint tenants each had possession of the whole but title only to his or her aliquot part. *Kennedy* v. *Rutter,* 110 Vt 332, 340, 6 A2d 17; *Brownson* v. *Hull,* 16 Vt 309, 312, 42 Am Dec 517.

The question here presented is whether Mrs. Parmelee acquired any interest in personal property by a gift made or intended to take effect in possession or enjoyment upon or after the death of the donor, Mr. Parmelee. The cases bearing on this question are not very numerous, due possibly to the fact that many states and the federal government have statutes expressly covering joint tenancies. Although the cases are not numerous there are many annotations covering this subject. See 1 ALR 2d 1103, note 3. Our search discloses that under some of the cases from New York and California the question just stated would be answered in the negative. The basis for those cases is, apparently, that all rights to property

held in joint tenancy, including that of survivorship and the rights springing therefrom, vest in each at the time the tenancy is created and that death only determines which shall take the whole of the property. See cases cited by the chancellor in his finding as to the law of New York and Ann. 3 ALR at p. 1642 et seq. The California decisions on this matter are questioned in *Gwinn* v. *Com'r. of Internal Revenue,* 54 F2d 728, 84 ALR 176, and the cases from New York are not all in accord on this question. See *In re Wm. B. Dana Co.,* 164 App Div 45, 149 NYS 417.

In our opinion the question we have propounded must be answered in the affirmative. Up until the time of Mr. Parmelee's death the rights and title of Mrs. Parmelee were limited. She could sever the tenancy by the conveyance of her interest but she could not lawfully destroy it by a conveyance of the whole as her title to the stock was limited to her interest therein. Upon and because of the death of her husband the rights and interest of Mrs. Parmelee in and to the stocks were enlarged. Where before she had title to only an undivided interest therein, because of and upon the death of her husband, and the survivorship right which then came into being, she became owner of the stocks unrestricted in right of possession and title. Thus she acquired an interest in the property which she had not theretofore possessed. The death of Mr. Parmelee did more than merely determine which of the two would take the whole of the property. It was the indispensable and intended event which brought the larger estate into being. His death became the generating source of valuable accessions to the property rights of Mrs. Parmelee in and to the stock. *Gwinn* v. *Com'r., supra,* affirmed with opinion in 287 US 224, 53 S Ct 157, 77 L ed 270; *Tyler* v. *U. S.,* 281 US 497, 50 S Ct 356 74 L ed 991, 69 ALR 758; *U. S.* v. *Robertson,* 183 F 711, cert. denied, 220 US 616, 31 S Ct 720, 55 L Ed 611; *Marble* v. *Jackson, supra; Re McKelway,* 221 NY 15, 116 NE 348, LRA 1917 E 1143. See also *In re Durfee's Estate; In re Kline's Estate; In re Von Bernuth's Estate,* all *supra.*

The defendant relies on *Atty. Gen.* v. *Clark,* 222 Mass 291, 110 NE 299, LRA 1916 C 679, in support of her claim that there was no gift to take effect in possession or enjoyment after the death of the donor. But that case is distinguishable from the one at hand. There each of the joint tenants had contributed one half to the fund or funds. This fact was stressed by the court and also the

fact that there was nothing to show that the right of survivorship was not as valuable to one as the other. It was held that under the circumstances it could not be said that there was a voluntary gift without consideration liable to the succession tax. It was also held that the survivor took under the instrument creating the tenancy and not under the laws relating to intestate succession.

The defendant also relies on *Phillips* v. *Plastridge* 107 Vt 267, 179 A 157, 99 ALR 1074. But that case is not in point here. That was neither a taxation nor a joint tenancy case but only had to do with the question of whether there was a completed gift of shares of stock from a father to a daughter. In the present case we have taken for granted that there was a gift from Mr. Parmelee to his wife of an interest in the stock at the time the certificates were issued in their joint names.

There was error in that part of the decree which held that the transfers of the stock in question are not taxable.

The parties hereto, through their respective attorneys, stipulated, inter alia, as to the amount of tax due and payable with interest thereon to a certain date on the transfer of the corpus of the custodian account and also on the transfers of the stock in question, in the event that such transfers were determined to be taxable. It was also so stipulated that "the Court in the Decree entered in this cause" should incorporate the stipulated sums in lieu of hearing and findings of facts to determine the amount of tax payable on the respective properties. The chancellor in his decree, in pursuance of the foregoing stipulation, set forth the stipulated amount as to the tax on the custodian account. He did not, because of the nature of his decree, set forth any other stipulated matters. Under all the circumstances, it seems better that a final decree in the case be drawn and entered below rather than here.

*That part of the decree which relates to the tax on the joint custodian account is affirmed. That part of the decree which relates to the tax on the transfers of shares of stock as detailed in paragraphs numbered 10 and 11 of the Findings of Fact is reversed. Cause remanded. Let a new decree be entered in accordance with the views expressed in the foregoing opinion and in accordance with the stipulation therein referred to.*