### In re Estate of Bial J. Boynton

[148 A2d 115]

November Term, 1958

Present: **Cleary, C. J., Adams, Hulburd, Holden and Shangraw, JJ.**

Opinion Filed January 6, 1959

*Black, Wilson, Coffrin & Hoff* for the petitioners.

*Frederick M. Reed,* Attorney General, and *Louis P. Peck,* Legal Assistant to Attorney General, for the Commissioner of Taxes.

**Shangraw, J.** This is a petition for a declaratory judgment under Chapter 77, V. S. 47 seeking a construction of §1055, V. S. 47 as amended by No. 26 of the Acts of 1951 in its application to (a) property transferred in trust; (b) jointly owned property; and (c) a claimed accord and satisfaction.

Petitioners are Caroline Boynton Rondeau, individually and as beneficiary under a trust created by Bial J. Boynton, deceased, and J. Boone Wilson, as trustee. The

petition was brought against Leonard W. Morrison, Commissioner of Taxes, who has been succeeded by Austin B. Noble. Stipulations were entered into by and between the parties as to all factual allegations and documents. Findings were made by the court predicated upon the agreed facts. The court issued a declaratory judgment order declaring that: (1) the property placed in trust by the deceased is subject to the assessment and payment of a transfer tax as provided by V. S. 47, §1055, as amended; (2) the real and personal property jointly owned by Bial J. Boynton and Caroline Boynton Rondeau, with right of survivorship is subject to the assessment and payment of a transfer tax upon 50% of the value thereof under the above statute; (3) there was not an accord and satisfaction of the transfer tax on the jointly owned property by the payment of $238.80 to the Commissioner of Taxes by Mrs. Rondeau. Petitioners took exceptions to (1) and (3) of the judgment order, petitionee to (2) of said order. The case is here on these exceptions. Thus the only question for us to determine is whether the judgment order is supported by the facts found. *Dindo* v. *Cappelletti*, 116 Vt 403, 405, 77 A2d 840; *Little* v. *Loud*, 112 Vt 299, 304, 23 A2d 628. The Commissioner of Taxes initially assessed a transfer tax on the property placed in trust, and on the full value of the jointly owned property.

The material facts are as follows: On January 9, 1949 Bial J. Boynton entered into a voluntary trust agreement with J. Boone Wilson, both of Burlington, Vermont, as trustee. At the time Mr. Boynton transferred securities to the named trustee of the value of $25,327.00 and a bank account of $7,300.05, making the total value of the trust as of the date of its creation $32,627.05. Mr. Boynton died on July 26, 1949, and the Commissioner of Taxes as of that date valued said trust property at $36,501.92. The trust agreement is irrevocable and contains the provision that "donor is desirous of making an outright gift for the benefit of his daughter Caroline Helen Boynton Rondeau, and her children." The trust agreement in part provides:

> "The TRUSTEE shall take and hold the trust estate, together with any funds which may hereafter be added,

with full power, from time to time, so long as this trust
agreement shall remain in force, in his sole discretion,
to hold, pledge, sell, convert, exchange or otherwise dis-
pose of said trust estate or any part thereof and to in-
vest and reinvest the same or any proceeds thereof
* * * "

The trust indenture also provides that the trustee make a
semi-annual accounting to Mr. Boynton during his lifetime of
* * * "all funds and property of the trust estate together with
all receipts and expenditures thus showing the amount on hand
at the time of such accounting. * * * "

The trust agreement further in part reads:

"Out of the income derived by the TRUSTEE from the
property at any time comprising the trust estate the
TRUSTEE shall:

First, pay all the necessary costs and expenses of
this trust, including a reasonable compensation of
the TRUSTEE.
Second, pay the balance of the income (herein-
after called net income) in installments as herein-
after set forth.

"The purpose of this trust is to provide for my daughter,
Caroline Helen Boynton Rondeau, her child, Thomas
Boynton Rondeau, and any children that may sub-
sequently be born to her. In view of the fact that so
long as I live I shall see that my daughter and her child
(or children) are not in need, the TRUSTEE during my
lifetime shall collect the income from the trust estate
and add such money to the principal, making no payment
whatsoever to my daughter or to anyone during my life-
time. The TRUSTEE shall reinvest such income as ac-
cumulates during my lifetime as he shall see fit.

"Upon the decease of the DONOR the TRUSTEE
will pay to the aforesaid Caroline Helen Boynton Ron-
deau during her life in quarterly installments the in-
come from the trust estate and so much of the principal
thereof as in his discretion shall be necessary or advisable
for the proper care, maintenance, support and education

of my daughter and her children. It is my wish that the TRUSTEE provide amply for the needs of my daughter and her children and to provide her from the principal with such money as in his sole discretion shall be for her and their best interest; payments, if any, from the principal to my said daughter shall depend entirely upon the judgment and discretion of my said TRUSTEE. "Upon the death of my said daughter the balance of the trust estate and any accrued income (if at that time there be any balance in said trust estate) shall be paid over forthwith to such children of my daughter as may be living at the time of her decease. If upon the death of my daughter she shall not leave any children (or children of deceased children) surviving then I direct that the TRUSTEE pay over said balance forthwith in equal shares to Henry Thomas Rondeau, my son-in-law (if living) and the Mary Fletcher Hospital; if my son-in-law be not then living, then the whole share be paid to the said Mary Fletcher Hospital. "Neither the income from said trust estate nor the principal fund shall be liable for the debts present or future of any beneficiary hereunder and shall not be subject to the right on the part of any creditor to seize or reach the same under any writ or by a proceeding at law or in equity. No beneficiary shall have any power to give, grant, sell, convey, mortgage, pledge or otherwise dispose of, encumber, or anticipate the income or any installment thereof, or of any balance in the principal thereof, it being my intention that no right of disposition of any such property shall vest in the beneficiary until the same shall have actually been transferred and paid over to such beneficiary."

Said agreement contains other provisions not here material.

Mr. Boynton for a number of years prior to his death had owned certain property with his daughter, Caroline Boynton Rondeau, as "joint tenants with the right of survivorship." This property consisted of a house and lot located in Burlington, Vermont, and also certain common stock and United States Government bonds, all of which were valued at $23,880.50.

Mrs. Rondeau contributed no money to the purchase of any of the jointly held property. Title remained the same until the death of Mr. Boynton, which occurred July 26, 1949.

As heretofore stated, after the death of Mr. Boynton and after the payment of the inheritance tax, the Commissioner of Taxes for the State of Vermont sought to impose a transfer tax on the assets held in trust, and on the jointly held property, each for its full value, all under and by virtue of V.S. 47, §1055, as amended.

Petitioners, by letter dated December 28, 1954, signed by Black & Wilson, their attorneys, took the position that the trust estate was not taxable under the provisions of the above statute. As to the jointly owned property it was also their contention that only 50% of the value thereof should be taxed and tendered a check for $238.80 "in full settlement of the Transfer Tax liability for the jointly owned property." This remittance was accepted by the Commissioner of Taxes by letter dated January 14, 1955, wherein it was stated that said sum was "accepted in partial payment of the outstanding transfer tax liability in the amount of $2161.46." Petitioners also claim an accord and satisfaction.

The statute in question, V. S. 47, §1055, as amended by the Acts of 1951, reads:

> "1055. *Transfers; tax; lien; estates by entirety.* A person in a class liable to a tax under sections 1053 and 1054, who acquires title to real estate within this state or any interest therein by deed, grant or gift, except in case of a bona fide purchase for a full consideration in money or money's worth, made or intended to take effect in possession or enjoyment upon or after the death of the grantor or donor, and every such person who thus acquires title to personal estate or any interest therein from a deceased person who at the date of his death was an inhabitant of this state and then owned such property, shall pay to the state the same tax that he would have been required to pay had such estate or interest passed to him from such deceased person by will, the laws of descent or decree of a court in this state.

Such tax shall be a first lien on the real or personal estate thus conveyed until paid in full.

"However, when real or personal property is held by a husband and wife, the survivor's interest in and ownership thereof shall not be deemed a transfer subject to taxation and this exception shall apply to all now pending estates in probate court and to all now unsettled estates of deceased persons."

■ Sections 1053 and 1054 referred to in the above statute have reference to collateral and direct inheritances respectively. The taxes provided for in sections 1053, 1054, and 1055, that is, taxes on collateral and direct inheritances and taxes on transfers are not taxes on the property, but upon the right of succession to the property merely. *Lovejoy* v. *Morrison*, 116 Vt 453, 457, 78 A2d 679, and cases cited.

■ ■ We will first consider the taxation of the trust property. It is a familiar and well settled rule of construction, that the true meaning of the Legislature is to be ascertained, not from the literal sense of the words used, but from a consideration of the whole and every part of the statute, the subject-matter, the effects and consequences, and the reason and spirit of the law. *In re Fulham's Estate*, 96 Vt 308, 316, 317, 119 A 433, and cases cited. The whole and every part of the enactment must be given attention as well as other statutes *in pari materia*, *Lovejoy* v. *Morrison, supra*, 116 Vt at page 457, 78 A2d at 681, citing *In re Estate of Rushford*, 111 Vt 494, 497, 18 A2d 175; *Gould* v. *Towslee*, 117 Vt 452, 459, 94 A2d 416, and cases cited. It is obvious that the purpose of §1055 is to prevent the evasion of taxes contemplated by sections 1053 and 1054. In *In re Fulham's Estate, supra*, 314, in discussing what is now §1055, omitting citations, the Court said: "But the real meaning and purpose of the lawgiver is the thing to be sought after, and if a fair and reasonable construction discloses it, it is to be given effect. Then, too, we must remember that the section under consideration is not the one that provides for taxing inheritances, direct or collateral, but the one intended to prevent the evasion of such taxes. The very purpose of the enactment was to make it impossible to escape such taxes by trans-

fers merely colorable or fictitious. The policy of such statutes, now in force in many states, is that the owner of property shall not evade such a tax, except by full and effective transfers made during his lifetime. Surely, such a statute should be carefully considered and liberally construed in favor of the taxing power, lest its purpose be easily circumvented by designing persons. For a construction that would ,facilitate evasion should be avoided." *Lovejoy* v. *Morrison, supra,* 116 Vt at 457, 78 A2d at 681. For a discussion of the legislative history of the statute before us, and related sections, see *In re Fulham's Estate, supra,* 96 Vt at 314, 119 A at 435, and *Lovejoy* v. *Morrison, supra,* 116 Vt at pages 456, 457, 78 A2d at 680, 681.

The question in this case is, did the property referred to in the trust agreement vest in possession or enjoyment independent of the death of Mr. Boynton and thereby free from taxation under the above statute? The leading case in this state construing what is now V. S. 47, §1055 is *In re Fulham's Estate, supra,* 96 Vt 308, 119 A 433. In that case Mr. Fulham, transferred certain securities to a trustee to be held in trust. Under the written agreement creating the trust the donor could, at his pleasure, have paid back to him any part of the trust fund. It was held that the corpus of the trust was subject to a tax under G. L. §1093, now V.S. 47, §1055. At page 315 of the opinion the Court stated: "As long as he lived, Fulham retained a very real and complete control over the trust fund. He could, at pleasure, recall any part of it, which means, of course, all of it. It is only when the owner relinquishes all power of control over the property and confers upon another the right to dispose of it and receive and use its avails, without subsequent restriction or control by the donor, that the transfer escapes the tax. The property, together with all the attributes of ownership, must pass from the donor, to take effect independently of his death," citing cases. This general principle was subsequently affirmed in *State* v. *Parmelee, supra,* 115 Vt 429, 434, 63 A2d 203.

It is urged by the petitioners that the trust created by Mr. Boynton was a complete and effectual transfer at the time of its creation for the benefit of the beneficiaries, and was not a gift made or intended to take effect "in possession or enjoy-

ment" after the death of the donor, and thereby not subject to a transfer tax under the statute under consideration, citing federal decisions and state cases in other jurisdictions. We do not attempt, nor can we reconcile the different views as expressed in the federal and state decisions. However persuasive they may be, either for or against taxation, at least they are not binding upon us in our construction of the statute in question.

We conceive that V. S. 47, §1055, as amended, was enacted to defeat the evasion of the tax upon inheritances by any form of conveyance or transfer where, upon or after the death of grantor or donor, the income, profit or enjoyment inures to the benefit of those who are not exempt from an inheritance tax under sections 1053 and 1054. In this case the divestiture took place at the time of the creation of the trust agreement; however, "enjoyment or possession" in the beneficiaries did not follow until his death, and then with restrictions. If the tax is to be avoided the two must concur, that is, divestiture on the part of the grantor or donor, and unrestricted "enjoyment or possession" on the part of the donee independent of and not contingent upon the death of grantor or donor. There is no error in that part of the decree which holds that the property placed in trust is subject to a transfer tax under V. S. 47, §1055, as amended.

We next consider the jointly owned property. This property consisted of real estate, stocks and bonds, and each stands alike on the question of taxability under V. S. 47, §1055, as amended. *In re Fulham's Estate, supra,* 96 Vt at 315, 119 A at 436. That joint tenancy may exist in personal as well as real property is well established. *State* v. *Parmelee,* 115 Vt 429, 437, 63 A2d 203. As joint tenants each had possession of the whole, but title only to his or her aliquot part, *State* v. *Parmelee, supra,* 115 Vt at 437, 63 A2d at 208, and cases cited.

Again referring to the statute, did Mrs. Rondeau acquire, by virtue of the joint ownership, property by gift * * * "made or intended to take effect in possession or enjoyment upon or after the death of the grantor or donor"? In

discussing this phase of the case we have in mind that Caroline Boynton Rondeau contributed no sums of money, nor gave any other valuable consideration toward the purchase price of the jointly owned property.   In answering the above question in the affirmative we rely on the Parmelee case, *supra*, where the pertinent facts as to joint property run somewhat parallel with this case, except that the relationship of husband and wife does not exist in the case under consideration.   Mr. Parmelee owned certain shares of stock which he caused to be transferred to himself and Esther M. Parmelee, his wife, "as joint tenants with the right of survivorship and not as tenants in common."   Mr. Parmelee died and the Court in construing §1055 held that the transfer of the stocks was taxable and at page 438 of the opinion stated: "Up until the time of Parmelee's death the rights and title of Mrs. Parmelee were limited.   She could sever the tenancy by the conveyance of her interest but she could not lawfully destroy it by a conveyance of the whole as her title to the stock was limited to her interest therein. Upon and because of the death of her husband the rights and interest of Mrs. Parmelee in and to the stocks were enlarged. Where before she had title to only an undivided interest therein, because of and upon the death of her husband, and the sur-vivorship right which then came into being, she became owner of the stocks unrestricted in right of possession and title. Thus she acquired an interest in the property which she had not theretofore possessed.   The death of Mr. Parmelee did more than merely determine which of the two would take the whole of the property.   It was the indispensable and intended event which brought the larger estate into being.   His death became the generating source of valuable accessions to the property rights of Mrs. Parmelee in and to the stock," citing cases. It is our view that the share of the jointly owned property in question, based upon each joint tenant's contribution, should in equity be applied in determining the liability for tax purposes in this case.   There should be an evaluation of the respective interests of the joint owners for tax purposes under §1055, as amended, in order to determine the part owned by each, and this is measured by the amount of consideration paid by each owner toward the purchase price.   Their interests are propor-

tional to the investment of each. This is in harmony with *State* v. *Parmelee, supra*, 115 Vt at 437, 63 A2d at 208.

■ Petitioners in their brief urge that at the time the joint tenancy was created a vested interest in one-half of the jointly owned property passed to Mrs. Rondeau which she could convey or alienate without restriction or control by the father, and that the only part of the jointly owned property subject to a transfer tax under V. S. 47, §1055, as amended, is the interest of the deceased joint tenant, or, in this case, the interest of one-half of the value of the property. Further, petitioners claim there is nothing in the statute under consideration authorizing the State to tax the whole of jointly held property and that the State should not tax more than one-half of the value in this case, citing federal and state cases. Mr. Boynton and Mrs. Rondeau each had possession of the whole, but title only to his or her aliquot parts. *State* v. *Parmelee, supra*, 115 Vt at 437, 63 A2d at 208. At least for tax purposes, in this case their individual interests were dependent upon their respective contributions toward the purchase price. In this case nothing was contributed by Mrs. Rondeau. A practical mind, considering results, would have some difficulty in accepting the conclusion that the death of Mr. Boynton did not have the effect of passing to Mrs. Rondeau substantial rights and economic benefits in the property never enjoyed by her before the death of her father. It is apparent that if joint estates were not subject to a transfer tax under a statute such as ours, and under circumstances such as exist here, an owner of property could avoid the tax by having his property transferred to himself and those who would otherwise be his legatees and devisees as joint owners with right of survivorship. This cannot be the legislative intent of the statute. There was error in that part of the decree which held that only 50% of the value of the jointly owned property is taxable. We hold that 100% of its value is taxable under V. S. 47, §1055 as amended.

■ In considering the doctrine of accord and satisfaction in its application to contracts the following principles appear well settled. The question of accord and satisfaction

may be one of fact or of law. Where the evidence leaves no room for opposing inferences it is one of law. *Curran* v. *Bray Wood Heel Co. Inc.*, 116 Vt 21, 24, 68 A2d 712, 13 ALR2d 728. It is our well settled rule that if one who has a disputed claim against another accepts and retains a less amount than he claims is due which is offered by the other in full settlement of such claim, it operates as an accord and satisfaction of such claim, and further controversy respecting it is ended. *Curran* v. *Bray Wood Heel Co., Inc.*, *supra*, at 24 and 25, 68 A2d at 714, 715, and cases cited. The payment of an amount less than that for which the debtor is liable does not constitute a valid accord and satisfaction unless there was a bona fide dispute or controversy as to the debtor's liability, or as to the amount due from him, or unless the damages are unliquidated. *Crosby's Admrs.* v. *Naatz*, 98 Vt 226, 229, 126 A 547. In the Crosby case, *supra*, the defendant offered his check and goods in settlement of a liquidated and acknowledged balance due the plaintiffs, and at page 229 the court stated: "It is well settled that the use of the check in such circumstances operated merely as payment *pro tanto*, and not as full satisfaction of the claim." A leading case is *McDaniels* v. *Lapham*, 21 Vt 222. At page 235 in discussing the general rule it was stated: "It would seem to follow, as a necessary deduction from this well established rule, that, when a party makes the offer of a certain sum, to settle a claim, when the sum in controversy is open and unliquidated, and attaches to his offer the condition, that the same, if taken at all, must be received in full, or in satisfaction, of the claim in dispute, if the other party receive the money, he takes it clogged with the condition which the other party has attached to it, and is thus bound to its fulfillment."

The check in question was tendered "in full settlement of the transfer tax liability for the jointly owned property." It was accepted "in partial payment" of the liability as computed by the Commissioner of Taxes. Petitioners claim that this constituted an accord and satisfaction, and that the State of Vermont is precluded from collecting any further sum. The assessment was based on 100% of the value of the jointly owned property. The check was on the basis of 50% thereof. It is urged by the petitionee that the petitioners must show

that there is an unsettled or disputed amount to be compromised, citing the Crosby case, *supra*, but in this case the issue here is not a particular sum of money, but a question of law as to whether the tax, the rate of which is statutory, is on 100% of the value of the property transferred, or upon 50% thereof. In other words, there is no dispute about the amount of tax under a 100% assessment, nor is there any dispute about the amount due under a 50% assessment. If there is a controversy as to liability, or as to the amount owing, it does not arise by reason of any contractual relationship of the parties. The transfer tax in question is purely statutory. The general rules applicable to accord and satisfaction do not apply here. The acceptance of the check by the Commissioner of Taxes operated merely as a payment *pro tanto*, and not as full satisfaction of the transfer tax on the jointly owned property. Moreover, to hold otherwise would hamstring the State in the administration of its business affairs such as here, including the collection of income taxes. In cases of this nature the taxpayer in effect makes up his own bill and remits to the State. If the general rules of accord and satisfaction applied in tax cases the taxing authorities would be precluded from the imposition of any additional amount found due after investigation. In *Commonwealth* v. *Wood*, 289 Ky 649, 159 SW2d 403, 405, cited in the State's brief, the executrix filed an inheritance tax report and enclosed a check based upon her appraisal of the estate. The check bore the notation that it was in full payment of the inheritance tax. The state treasurer endorsed the check and issued a receipt. The Kentucky Supreme Court refused to find a binding accord and satisfaction "in the absence of a showing of a bona fide dispute and a compromise intentionally entered into" and held that the taxing authority could assert a deficiency. There was no error in the decree holding that there was not an accord and satisfaction respecting the payment of the transfer tax on the jointly owned property.

*That part of the decree which relates to the transfer tax on the property placed in trust is affirmed. That part of the decree which relates to the tax on the jointly owned property is reversed. That part of the decree relating to accord and satisfaction is*

*affirmed. Let a new decree be entered in accordance with the views expressed in the foregoing opinion.*

Note: Mr. Justice Holden took no part in the consideration or decision of this case.