## Delbert Guilmette et al v. Franklin Realty Corporation and Bertrand Lussier and Estate of Virginia Guilmette

[ 241 A.2d 323 ]

February Term, 1968

Present: **Holden, C.J., Barney, Smith and Keyser, JJ.**

Opinion Filed February 6, 1968

*M. Martin Leinwohl,* Esq. for the Plaintiffs.

*Kissane & Heald* and *William B. Goldsbury,* Esq. for the Defendants.

**Holden, C.J.** The subject of this appeal is the settlement of the estate of Virginia Guilmette who died intestate on April 15, 1961. The appellants are the children and heirs of the decedent. By an appeal to Franklin County Court, they challenged the order of the probate court allowing the final account, contending the administrator failed to marshall all of the assets of the estate. In parallel proceedings, by petition to the court of chancery, they seek to set aside and avoid the administrator's deed of a farm, owned by the decedent in her lifetime, which was conveyed to the defendants Bertrand Lussier and the Franklin Realty Corporation.

By agreement of counsel, the appeal from probate and the chancery cause were consolidated and heard by the chancellor, sitting alone. His findings report these facts.

For many years the plaintiffs' parents, Joseph and Virginia Guilmette, resided on a farm in the Town of Richford. The chancellor referred to this property as the homestead farm. The property was held by Joseph and Virginia, as tenants by the entirety. The parents also owned an interest in a lower farm. Title to this property was in Joseph, Virginia and their son Merlin, as joint tenants with right of survivorship. Merlin is one of the plaintiff appellants in the present proceedings.

Joseph Guilmette died in November, 1960. At that time both farms were operated as a single unit, with the equipment and livestock interchanged as the farm work required. The dairy herd occupied barns at both locations.

The plaintiff Merlin Guilmette and his parents worked together and operated the farms, as a joint enterprise, during a period of forty-four years. Merlin received no wages, but shared in the income derived from the farming operations. The milk checks received for the dairy produce were made payable to Joseph, Virginia and Merlin.

On the death of Joseph, farming at the homestead was discontinued and all operations were transferred to the lower farm. Merlin and his mother carried on the farming at this location until his mother's death on April 15, 1961. At the time of her death she was the sole owner of the home farm, consisting of 175 acres.

The chancellor found that all of the livestock, farm tools and implements on both farms, at the time of Virginia's death, were acquired and accumulated through the joint efforts of Merlin and his parents. The chancellor further found that, on the death of his mother, Merlin became the sole owner of the lower farm as the surviving joint tenant. Except for some pieces of furniture, the decedent owned no other personal property at the time of her decease.

On April 21, 1961 the plaintiff Merlin and four of his sisters joined in a petition to the probate court for the district of Franklin, requesting the appointment of the defendant William B. Goldsbury as administrator of their mother's estate. The application states the decedent possessed no personal estate, but sets forth that she owned real estate of the value of $5,000. The application was granted and the defendant Goldsbury was appointed.

The plaintiff Merlin claimed full ownership of all the livestock and farm equipment and so informed the administrator. Shortly after his mother's death Merlin moved the livestock and farm tools from the homestead to the lower farm.

The court also found that the administrator never took possession of, nor operated, the home farm and derived no income from it. The property has been occupied by the plaintiffs, or their representatives, since their mother's death.

The probate court commissioned a real estate broker, one Campbell, and Francis Whitney, husband of the plaintiff Barbara. Whitney (sic), to appraise and report, upon oath, the true value of the decedent's real and personal property. They valued the home farm at $5,000 and reported this to be the only asset in the estate.

The administrator petitioned the probate court for authority to sell the real estate for the purpose of paying the decedent's debts. After notice to the plaintiffs and hearing, the court issued a license to the administrator on January 25, 1962 authorizing him to sell all of the real estate for this purpose, at public or private sale.

Upon granting of the license, the administrator advertised the property in the Richford Gazette, a newspaper within the northern part

of Franklin County. The advertisement was continued for two consecutive weeks, but produced no offers.

The subject property was encumbered by a mortgage to the Franklin County Bank. On October 29, 1962, the mortgagee, by its attorney, notified the administrator that foreclosure proceedings would be commenced unless the mortgage indebtedness was satisfied at an early date.

On July 3, 1963 the administrator, acting on authority of the license issued by the probate court, conveyed the property to the defendants Franklin Realty Corporation and Bertrand Lussier, for the sum of $5,850. The purchasers agreed to pay the taxes assessed on the property for 1963 in the amount of $391.00. On July 8, 1963 the administrator paid the Franklin County Bank $4,846.47 in full satisfaction of the mortgage obligation.

At the time of the sale there was little demand for farm property for agricultural use in the Richford area. Such market as did prevail was for uses other than farming. During the tax years 1961 through 1963 the property was appraised in the tax list at $4,000. According to the findings, the tax appraisal represented one-third of the value.

The findings establish that the fair market value of the farm of Virginia Guilmette, at the time of her death, was $5,000. It increased in value to $6,000 from the date of her death to July, 1963, when it was sold to the defendants.

On these facts the chancellor confirmed the sale of the farm to the defendants and approved the administrator's account. In so doing, the findings report an apparent deficiency in "the curiosity, the initiative and diligence" exercised by the administrator in ascertaining the property and assets of his intestate. Yet he held the plaintiffs had failed to sustain their allegation that the administrator had not marshalled all the assets of the estate.

It is at once apparent that the chancellor's concern was generated by the inconsistency of Merlin's position in this litigation. The administrator relied implicitly on Merlin's representaton that he owned all of the personal property on both of the farms which he operated with his parents. Now Merlin joins with his brothers and sisters to complain that the administrator made no effort to verify his claim of title to the personality.

Of this aspect of the case, the chancellor reported: Upon the decease of his mother Virginia he contended and claimed that he was the lawful owner of all the livestock, farm implements and

tools located in, on and about the farm properties by virtue of being the surviving joint tenant. The defendant administrator after inquiries apparently became satisfied that such was the fact and abandoned this personal property to plaintiff Merlin. Plaintiff Merlin testified during this hearing that as the surviving joint tenant of Joseph and Virginia he was the lawful owner of all the personal property in question. He took possession of it, used it, and ultimately sold it.

The facts thus stated are abundantly supported by the evidence. Indeed our search of the record has failed to uncover any evidence to the contrary. In addition, it appears that the deed of the lower farm in 1945 conveyed both real and personal property, including extensive farm equipment and machinery to Joseph, Virginia and son Merlin "and unto the survivor of them, and not as tenants in common." Of the combined dairy herd of fifty cattle on both farms at the time of Joseph's death, all but sixteen were born on the farm. The sixteen were purchased by Merlin, but he assumed they were jointly owned with his mother and father. "That's the way we bought everything."

Of course, a joint tenancy may exist in personal as well as real property. *In re Estate of Boynton,* 121 Vt. 98, 106, 148 A.2d 115. It may be created by agreement of the parties, as well as by grant or devise. See *Pelton's Executor* v. *Dumas,* 117 Vt. 13, 16, 84 A.2d 408; *State* v. *Parmelee,* 115 Vt. 429, 437, 63 A.2d 203; *Gilbert, Executor* v. *Heirs of Richards,* 7 Vt. 203, 208; 20 Am.Jur.2d, Cotenancy and Joint Ownership §9. On the record presented, Merlin acquired title to the lower farm and all of the personalty, as the sole survivor of the original joint estate. *Kennedy, Admr.* v. *Rutter, Admr.,* 110 Vt. 332, 340, 6 A.2d 17; *Gilbert, Executor* v. *Heirs of Richards, supra.* Merlin's exclusive ownership of the personal property on both farms is confirmed by the representation of the sons and daughters of the decedent who resided in Franklin County at the time of their petition to the probate court for the appointment of an administrator for their mother's estate. It is further substantiated by the inventory returned by the appraisers to the probate court. See, *Boyden* v. *Ward,* 38 Vt. 628, 634.

The chancellor's statement—"We cannot find—by the required measure of proof that he (the administrator) failed to marshall

all the assets" does not necessarily mean that there was no evidence on the point. *Haskins* v. *Haskins Estate,* 113 Vt. 466, 470, 35 A.2d 662. Here, the only evidence advanced in the plaintiffs' brief to support their claim that Virginia Guilmette had other assets, is a report of a personal property appraisal prepared by one Eldon Laplant on April 11, 1962 (Pltf. Ex. 30). The appraiser certified it was made "(I)n connection with property given by the Guilmette Farm to the Franklin County Bank." The property described in the appraisal was mortgaged by Merlin Guilmette to the Franklin County Bank on April 12, 1962. This evidence is entirely consistent with the unchallenged finding that all the personal property on the two Guilmette farms became the sole property of Merlin after the death of his father and mother.

The complaint that the administrator derived no rent or income from the farm is fully answered by the chancellor's findings that the estate had neither farming equipment nor livestock to produce any income. The decedent's interest in income producing property at her death became the exclusive property of Merlin. As for rental of the home farm, it is undisputed that the plaintiffs or their representatives have occupied this farm since the death of their mother. While it might be said that the administrator was remiss in failing to collect rent for the benefit of the estate during the period of this occupancy, the plaintiffs are in no position to complain of this neglect, since it apparently worked to their advantage.

The remaining claim of error is assigned to the chancellor's refusal to set aside the administrator's deed of the home farm to the other defendants. It is their contention that the property was sold for much less than its fair market value.

The findings on this point are to the contrary. There is sufficient evidence to support the chancellor's finding that the property had a fair market value of $6,000 at the time of its sale. The plaintiffs' real estate broker advanced the opinion the property had a market value of $7,500, but pointed out that for general farming purposes, it had no market value. The claim that the administrator offered the property to some of the heirs for $7,000, but never gave them an opportunity to purchase, is not substantiated by the record.

The trial court is allowed a wide latitude in passing on the evidence relating to market value of real property. *Farr* v. *State High-*

*way Board,* 122 Vt. 156, 161, 166 A.2d 187; *Vermont Electric Power Corp.* v. *Whitcomb,* 123 Vt. 87, 90, 181 A.2d 63. Appellate intervention is justified only where the record furnishes no reasonable basis for the fact determined by the lower court. *Platt Admx.* v. *Shields,* 96 Vt. 257, 272, 119 A. 520; *Crawford* v. *Lumberman's Mutual Casualty Co.,* 126 Vt. 12, 16, 220 A.2d 480. Such is not the case before us.

The probate court licensed the administrator to sell. The property sold above the value at which it was inventoried and there is no showing that it would have sold for more at public auction. Here the property was sold pursuant to a lawful license properly issued on adequate notice, with full opportunity for the plaintiffs to be heard. The price was consistent with the true market value.

These facts are in sharp contrast with those alleged in *Wetmore & Morse Granite Co.* v. *Bertoli,* 87 Vt. 257, 263, 88 A. 898.—the only case cited by the plaintiffs on this point. That case was before this Court on a demurrer to the creditors' bill. The opinion by Justice Haselton points out that the defendant executrix had sold the property in a private sale to her codefendants. The sale was made without license from the probate court, against the creditors' interest and with the intend to defraud them. None of these factors are present in the case before us.

The plaintiffs have shown no cause to disturb the chancellor's determination of the facts. His findings fully support the judgment allowing the administrator's account. The same considerations preclude any cause for equitable relief. Accordingly, the decree dismissing the complaint must be affirmed.

*Judgment of the Franklin County Court, on appeal from probate court for district of Franklin, affirmed. Decree of the court of chancery for Franklin County, dismissing the complaint, is affirmed. Let the result be certified.*

**Shangraw, J.,** did not participate in the decision in this case.