Joseph F. Kostohris, former guardian of the person of estate of Charles Kostohris, an incompetent, has appealed from an order of the district court of Fergus county, declaring him personally responsible for and chargeable with sums aggregating $13,504.47 and directing the payment of that account to the guardian in succession, Merle C. Groene.
Charles Kostohris, a World War veteran, was declared incompetent, and Joseph F. Kostohris, his father, was appointed guardian of his person and estate in 1922. The appointee duly qualified in Cascade county, where the appointment was made. Due to changes in residence, the guardianship proceedings were transferred from Cascade to Judith Basin county, and later to Fergus county. The guardian acted continuously from September, 1922, to January, 1933, during which period he filed but four "annual" accounts, all of which were heard, settled and allowed, the last of these being approved September 3, 1930. A fifth account was filed in September, 1931, but was not presented for settlement. In July, 1932, an "Amended Fifth Annual Account" was filed, but no action was taken thereon.
On January 10, 1933, Joseph F. Kostohris was removed as guardian and ordered to make his final accounting to the court, and on February 21, 1933, Merle C. Groene was duly *Page 230 
appointed and qualified as guardian of the incompetent. On March 11, 1933, Kostohris filed what is entitled his "Second Amended Fifth Annual Account," whereupon the court made an order appointing March 21, 1933, as the day for the settlement of the account, and notice thereof was duly posted. Both the order and notice provided for the settlement of the "Second Amended Fifth Annual Account" of "Joseph F. Kostohris, formerly guardian of the Estate of Charles Kostohris."
The matter came on regularly for hearing on March 21, at which time Charles W. Buntin, an attorney at law, appeared on behalf of the former guardian; Merle C. Groene, also an attorney at law, appeared in propria persona, and Claude L. Meredith, attorney for the Veterans' Administration, appeared as amicus curiae.
Suggestion was made at the outset that Kostohris, having been removed and ordered to file his final account, should be before the court with such an account; whereupon the court asked counsel for the former guardian if he intended the account as his final account, and counsel replied that "it would be a final account." All parties then agreed to treat the account before the court as the final account required, and proceeded with the hearing. Kostohris testified in support of the account and was cross-examined by both Meredith and Groene.
After the taking of testimony, some discussion arose as to the necessity of having a transcript of the evidence. The court stated, "I don't know until we get this transcript * * * as to whether or not further proof is going to be necessary." Mr. Meredith stated that the transcript would be "almost absolutely necessary" to him, whereupon the court asked, "And from that you wish to formulate your further objections?" to which Meredith replied, "Not that, your Honor. We wish to submit it more in the nature of a memorandum for the assistance of the court." The court then stated that the transcript should be ready in ten days, and upon its receipt counsel could "prepare memoranda and submit them," and suggested to counsel for the former guardian that he "in the interim" submit his authorities on objection to the appearance *Page 231 
of the government. Here the record recites, "Hearing closed." There follows the recitation, "Further Hearing" April 11, 1933. The appearances are as on the hearing of March 21.
Meredith then offered a four-page "list of payments" of disability compensation and insurance claimed to have been made by the government to the former guardian, purporting to show the number, date and exact amount of each check issued, with the affidavit of the "Director of Finance of the Veterans' Administration" that the same is a "true, correct and complete statement" of such payments, as shown by the records in his office. The purpose of the introduction of this statement was to "clarify" the evidence, as to the payments, given on the hearing. The statement was admitted over the objection of counsel for the former guardian. No further evidence was adduced at the hearing on April 11. The matter was then finally submitted to the court, and in due time the court made findings of fact and conclusions of law, resulting in the order from which this appeal is taken.
There is some contention made that, by reason of insufficient[1, 2] notice, the court was without jurisdiction to hear and settle the former guardian's final account. As above noted, the notice given recited that, on the day specified, the court would hear and settle an "annual" account, but all parties before the court agreed March 21 that the account presented was the former guardian's final account, and consented to the hearing as of such an account. While there was no formal notice of a further hearing to be held on April 11, the hearing of March 21 was in effect continued for an indefinite period for further proceedings with reference to the settlement of the account, and on April 11 all parties present at the hearing on March 21 were before the court and participated in the further hearing, thus conferring jurisdiction of the persons involved.
The provisions of the Codes regulating the practice relative to estates of decedents are applicable to guardianship proceedings. (Sec. 10463, Rev. Codes 1921.) Section 10300, Id., declares *Page 232 
that when the account rendered for settlement in a probate proceeding is a final account, and a petition for the final distribution of the estate is filed therewith, the notice of the settlement must state those facts. The purpose of this provision is obviously to bring all parties interested in the estate and its distribution within the jurisdiction of the court and bind them by the orders thereafter made closing the estate.
The notice required in probate proceedings serves the purpose of a summons in an ordinary action and is jurisdictional, but, as in the ordinary action, appearance and participation in the action cure the defect of failure of service, so in a probate proceeding, appearance and participation in the proceedings cure defective notice or failure to give notice, and one who has appeared and taken part in the hearing, as did the former guardian and his counsel here, will not be heard to say that the court did not have jurisdiction to determine his rights or liabilities. (In re Davis' Estate, 35 Mont. 273, 88 P. 957;Hoppin v. Long, 74 Mont. 558, 241 P. 636; Oliveri v.Maroncelli, 94 Mont. 476, 22 P.2d 1054.)
It is suggested that it is not proper to consider the account before the court as a "final" account "in view of the consequences that may flow from such consideration," and that, should it be held that the guardian by participation waived notice, nevertheless "there are other interested parties who are entitled to notice of any proceeding as to which they are to be legally bound." This reference is clearly intended to include the sureties on the guardian's bond.
Regardless of how designated, any report as to the last or[3] final acts of a guardian, on which a hearing is had and on which the court fixes and determines the amount due the ward's estate from a guardianship then or theretofore removed from office, is the "final" account of such guardian, in so far as the guardian is concerned. (Egan v. Vowell, 66 Okla. 61,167 P. 205, and cases cited.) Herein it was conceded that the account on which the hearing was had was intended as a "final" account, and it was so in fact. As to misdesignation *Page 233 
of a guardian's account, see, also, McCauley v. AmericanSurety Co., 81 Mont. 161, 263 P. 90.
The surety on the guardian's bond is not a necessary party to[4] such a proceeding, or entitled to notice thereof, and in the absence of fraud it is conclusive as to the adjudication therein made. (Southern Surety Co. v. Jefferson, 73 Okla. 7,174 P. 563; Rice v. Wilson, 129 Mich. 520, 89 N.W. 336;Kenner v. Caldwell, Bail. Eq. (8 S.C. Eq.) 149, 21 Am. Dec. 538.) Consequently, in the absence of fraud or mistake, when such an adjudication becomes final by reason of the failure to appeal, or by affirmance on appeal, it is binding on the sureties though they were not made parties to the proceeding or notified thereof, or where they did not participate therein. (Botkin v.Kleinschmidt, 21 Mont. 1, 52 P. 563, 69 Am. St. Rep. 641;Langdon v. Langdon, 104 Neb. 619, 178 N.W. 178; Gantz v.Gease, 82 Ohio St. 34, 91 N.E. 872; Chilton v. Parks,15 Ala. 671; Fahey v. Boulmay, 24 Tex. Civ. App. 279,59 S.W. 300; Shepard v. Pebbles, 38 Wis. 373; see 28 C.J. 1294.)
In order to clear the way for argument on the assertion that[5-7] there is no evidence to warrant certain of the court's findings, counsel for the former guardian contend that the settlement of each annual account is a final adjudication, citingEstate of Murphy, 57 Mont. 273, 188 P. 146, and cases therein cited, and therefore the court erred in admitting and considering evidence going back of the settlement of the fourth annual account. The holding in the Murphy Estate decision is based upon the provision contained in section 7649 of the Revised Codes of 1907 (now section 10303, Rev. Codes 1921), declaring the settlement and allowance of all accounts filed in the matter of estates of decedents conclusive against all persons in any way interested in the estate. This section was adopted from California (California Code Civ. Proc., sec. 1637), and section 10440 of our Revised Codes was likewise adopted from that state. (California Code Civ. Proc., sec. 1789.) In a similar case and on a like contention as is here made, the supreme court of California, long prior to the adoption of these enactments, disposed of this question in the following *Page 234 
language: "Section 1789, Code of Civil Procedure, provides that all the proceedings as to accounting, and the settlement of accounts of guardians, must be had and made as required concerning estates of deceased persons; but this does not make section 1738, Code of Civil Procedure, as to the conclusiveness
of the settlement of administrators' accounts, applicable to guardians' accounts. The Code does not in terms provide that the settlement of a guardian's intermediate account shall be conclusive. It may, therefore, be said to be merely prima facie evidence of its correctness, subject to be inquired into." (Guardianship of Cardwell, 55 Cal. 137.) (It will be noted that, in the above quotation, reference is made to "section 1738" as that declaring the settlement of an administrator's account "conclusive"; this is clearly a misprision, as that section has nothing to do with the subject; clearly the court had reference to section 1637, cited in the brief of counsel on the point discussed.) The construction placed upon section 1789, above, is manifestly correct; it declares only that the proceedings shall be conducted as in the case of estates of deceased persons, but does not declare that the effect of the settlement of an account shall be the same.
Having adopted the statutes from our sister state, we adopt the construction placed thereon by the highest court of that state theretofore. (Mares v. Mares, 60 Mont. 36,199 P. 267; State ex rel. Rankin v. State Board of Examiners,59 Mont. 557, 197 P. 988.)
Because the statute so declares, we held in the Matter of theEstate of Murphy, supra, that on an appeal from the settlement of a final account, the heirs could not question the correctness of settled annual accounts, but that decision is not binding upon us in the present proceeding, nor was it binding upon the trial court.
The California decision, above, is in accord with the general rule applicable in guardianship matters, which is that "annual or partial accounts of a guardian, approved by the court, have not the force and effect of a final judgment and are in no sense conclusive of the correctness thereof, unless made so by *Page 235 
statute." (28 C.J. 1239; Guardianship of Cardwell, supra;American Bonding Co. v. People, 46 Colo. 394, 104 P. 81;Luke v. Kettenbach, 32 Idaho, 191, 181 P. 705; In reHawley, 104 N.Y. 250, 10 N.E. 352; In re O'Brien's Estate,80 Neb. 125, 113 N.W. 1001, and many other cases in point.)
The reason for the rule is that "the ward, who is the party in adverse interest, is legally and usually actually incapable of protecting his own interest, and the one whom the law charges with the duty of protecting his rights is in this matter the adverse party. It would therefore be grossly unjust to make the annual accounts conclusive against the ward, though they have been accepted by the court. They are prima facie evidence of the state of the account, but are subject to re-examination in settling later accounts." (12 R.C.L. 1154.)
Evidence as to the payments made to Kostohris, as guardian, over the entire period of his trust, was admissible on the hearing on his final account.
The court's first finding of fact is that the guardian accounted for the receipt of $6,795.19, but received from the government $9,061.80, leaving a balance of $2,266.61, received from the government, for which the guardian has failed to account. This finding is challenged on the grounds, first, that the sum mentioned cannot be arrived at by a consideration of the evidence before the court, and, second, that the list mentioned was not admissible in evidence, as it is not a "document," and, if considered such, the certificate, in the form of an affidavit, is insufficient to warrant its admission.
As to the first ground of objection, during the hearing there was a suggestion made that the files and records of the guardianship proceedings should be introduced in evidence, but it was agreed that the court could take judicial notice thereof, and, when the matter was finally submitted, the court announced that it would determine "the truth of this accounting" on the proof offered, the record and "the files of this case." No objection was offered to the court's taking judicial notice of the contents of the files, nor to the suggestion of the matter on which the court would determine the truth of *Page 236 
the accounting. In these circumstances we need not determine whether or not the court could take judicial notice of "the files in this case," under the provisions of section 10532 of the Revised Codes of 1921. However, in passing, attention is called to the declaration that "the trial court is bound to take judicial notice of the files of its own court," made with reference to the files of the particular case before the court. (Craiglow v. Williams, 45 Cal.App. 514, 188 P. 76.)
These files are not in the transcript, and, as all of the evidence is not, therefore, before us, we cannot inquire into the correctness of the court's computation. (Skillen v. Harris,90 Mont. 389, 3 P.2d 1054; McBride v. School District,88 Mont. 110, 290 P. 252.)
At the time the "statement" was offered and objection[8-11] interposed, the court reserved its ruling and, so far as the record discloses, never did rule; it is therefore impossible to say whether or not the court considered it.
Counsel for the government and the present guardian insist that, on the evidence not before this court, the trial court could have found an amount due which is but $196.61 less than that found. We cannot say whether this is so or not, but if so the finding is not fully warranted by the evidence, and, on the other hand, while the court's finding No. 1 is that the former guardian received from the government $9,061.81, the checks listed total considerable more than that amount.
The challenged exhibit is entitled "Statement of Payments. Kostohris, Charles, C — 344, 424." It consists of four pages of approximately thirty lines each; the first one and one-half pages cover purported payments of "Disability Compensation," as follows:
"Check No. Period Amount. 40 455 273 February 1923 100.00 * * *."
The remainder is under the head "Insurance," for example:
"Check No. Dated Amount. 50 887 694 June 31, 1922 57.50." *Page 237 
To this "statement" is attached an instrument entitled "Veterans' Administration, Washington," which reads, in part, as follows:
"District of Columbia, City of Washington, ss.
"I, M. Collins, do hereby certify that I am the Director of the Veterans' Administration * * *; as such Director I have under my care, custody and control, the records of all payments made to beneficiaries * * *; that I have personally examined the records of my office relative to * * * payments made to Joseph Kostohris as legal guardian of Charlie Kostohris, * * * and that the paper herewith enclosed, composed of four sheets * * * is a true, correct and complete statement of payments of disability compensation and insurance."
"[Signed] M. COLLINS.
"Subscribed and sworn to before" a notary public.
"[Seal.]"
Objection is made to the form of the certificate, it being contended that the instrument attached to the "statement" is but an affidavit of the custodian. There is no merit in the objection. To "certify" means merely to vouch for a thing in writing; a certificate is an authoritative attestation, and any form which affirms the fact in writing is sufficient. (Doherty
v. McDowell, (D.C.) 276 Fed. 728; Cincinnati, N.O. T.P. Ry.Co. v. Fidelity Deposit Co., (C.C.A.) 296 Fed. 298; State
v. Abernethy, 190 N.C. 768, 130 S.E. 619.) "The technical treatment of the subject shown by some courts is unjustifiable"; the certificate need, on principle, state no more than that the paper bearing it is a copy of a specified document in the certifier's custody. A number of copies of as many documents may be united under a single certificate (3 Wigmore on Evidence, 554), and a custodian may certify to a pertinent part of a document only (Priddy v. Boice, 201 Mo. 309, 99 S.W. 1055, 119 Am. St. Rep. 762, 9 Ann. Cas. 874, 9 L.R.A. (n.s.) 718).
It will be noted that while the instrument is in the form of an affidavit, it contains the appropriate wording of a certificate. *Page 238 
A substantial compliance with the form of the required certificate is sufficient. (22 C.J. 836; Jones' Commentaries on Evidence, 2d ed., sec. 1710.) The certificate is sufficient. (Galvin v. Palmer, 113 Cal. 46, 45 P. 172.)
Section 10568, Revised Codes 1921, provides that "official documents may be proved as follows: * * * 9. Documents in the departments of the United States government, by the certificate of the legal custodian thereof." The term "document" as used with reference to the introduction of evidence is of broad signification; it means "any matter expressed or described upon any substance by means of letters, figures, or marks, or by more than one of these means, intended to be used, or which may be used, for the purpose of recording that matter" (Arnold v.Pawtuxet Valley Water Co., 18 R.I. 189, 26 A. 55, 56, 19 L.R.A. 602); "anything that may be read as communicating an idea" (Hayden v. VanCortlandt, 84 Hun, 150, 32 N.Y. Supp. 507, 509). However, a "copy" must ordinarily be a transcription or exact duplication of the original, and while, as Dean Wigmore states in the work to which reference has been made, it is often beneficial and desirable to have but the essence of a document in evidence and "accordingly, by statute, the use of certificates to the effect and substance has been widely sanctioned" (Wigmore on Evidence, 559), in the absence of statutory authority to this effect, the certified copy must be in the literal terms of the original (Id., 557), at least as to the part certified, if the whole document is not necessary. While a "record" is usually considered more permanent than a "document" (Cudahy Packing Co.
v. United States, (C.C.A. Ill.) 15 F.2d 133), the reference to "documents" in the Workmen's Compensation Act is held to include records (Paola v. Porter Bros., 209 App. Div. 716,205 N.Y. Supp. 281).
The checks or vouchers issued by the government to the former guardian would, of course, be the best evidence; by virtue of the above-quoted statute, they may be proved by the certificate of "the custodian thereof." A certified copy of a government "document" is admissible under the authority of *Page 239 
section 10568, above. (Stephens v. Nacey, 49 Mont. 230,141 P. 649, 653; Welch v. All Persons, 85 Mont. 114,278 P. 110.)
In the case of Stephens v. Nacey, it was held to be error to admit a certified copy of a copy of the original document, but the court declared that "in view of the fact that a proper copy could easily be supplied, and that it does not appear that prejudice was wrought by the use of the copy admitted, we shall not reverse the judgment merely for the purpose of allowing the error in this connection to be corrected." The rule as to error without prejudice does not aid us here, however, as the "Director of Finance of the Veterans' Administration" does not certify to a copy of a record kept in his office, but merely declares, under oath, that he has under his care and control "the records of all payments made to beneficiaries of said Administration"; that he has "personally examined the records" of payments to this guardian; and that the attached "is a true, correct and complete statement of payments" made.
If the "statement" is the result of the examination of the voluminous records in the director's office, the official might, on a showing of his competency, be permitted to testify, either orally or by deposition, as to the result of his examination, but his report thereof was not sufficient as a substitute for his testimony. (State v. Ray, 88 Mont. 436, 294 P. 368.) On the other hand, if, as a matter of bookkeeping, each account in the office is kept separate and the checks, as issued, are entered therein under the proper caption, the account might be proved as is a ledger account made up from daily sales slips, but again the proof offered and received was not sufficient to entitle the "statement" to admission as a certified copy of such an account. Without a further showing than that made by the certificate, the exhibit was not admissible in evidence.
Error is predicated upon the action of the court in charging[12-14] the former guardian with principal and interest on three loans, aggregating something over $1,300, made without securing an order of court, and secured by mortgages on personal property. These loans were not repaid and, it would *Page 240 
seem from the testimony of the former guardian, are now uncollectible.
Counsel for the government and the present guardian contend that, as section 10306, Revised Codes 1921, specifies that money shall be loaned only on real estate security, or certain public securities, these loans could not have been authorized by the court. That section, however, has to do only with loans from the funds of decedents' estates and deals with substantive law, rather than a matter of procedure, so, that, as above noted, the section is not made applicable to guardianship matters.
The investment of a ward's money is governed by section 10443, which authorizes the court, on application of the guardian, to direct the investment of the money "in real estate, or in any other manner most to the interest of all concerned therein." The court could have authorized the loans secured by chattel mortgages, but as no such authority was obtained, the guardian assumed "the entire risk," and, under the evidence, the court was justified in charging these loans to the former guardian. (Kelly v. Kelly, 89 Mont. 229, 240, 297 P. 470.)
The court also charged the former guardian with two loans made on real estate security to his two sons, brothers of the ward. The record indicates that these loans were made after securing authority from the court. As to the $2,000 loan to Theodore Kostohris, there is evidence tending to show that it was made on a mortgage on a house in Great Falls, but from the meager testimony concerning it, it would seem that the guardian had no knowledge of the mortgage and permitted the house to be sold, in some manner, clear of the mortgage and the debt to become worthless. Such facts, satisfactorily established on a rehearing, may warrant a finding declaring that the guardian's conduct was so negligent as to make him chargeable with the balance due on the note.
The second of these loans was evidently secured by mortgage on a house in Danvers; what the original value thereof may have been is not disclosed; the guardian testified that it *Page 241 
has depreciated in value and now has a value of $600. However, a guardian is not an insurer of the safety of the investments made by him (Kelly v. Kelly, supra), and may show that a loss was not caused by his fault (In re Connolly's Estate, 73 Mont. 35,235 P. 408). While a representative may be liable because of loss through his fault, the burden of proving that a loss is due to negligence, is on the heir, or ward, seeking to charge the representative, as "there is no presumption that he has been guilty of the fault causing the loss." (In re Dolenty's Estate,53 Mont. 33, 161 P. 524, 528.) The evidence, without some further showing, does not warrant charging this loss to the former guardian.
The evidence as a whole is so unsatisfactory that, in view of the fact that the burden of paying over the amount due to the present guardian will undoubtedly fall on the innocent sureties, a rehearing should be had on the final account of the former guardian.
Errors necessitating a reversal of the order being manifest, the order is reversed and the proceeding remanded to the district court of Fergus county, with direction to set aside the order made and rehear the objections to the final account of the guardian.
MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur. *Page 242