### In re Edward Wheelock

[287 A.2d 569]

No. 56-71

Present: Shangraw, Barney, Smith and Keyser, JJ., and Daley, Supr. J.

Opinion Filed February 1, 1972

*J. Morris Clark,* Vermont Legal Aid, Inc., Burlington, for Plaintiff.

*James M. Jeffords,* Attorney General, and *Raymond S. Fitzpatrick,* Assistant Attorney General, for Defendant.

**Barney, J.** The plaintiff is appealing the denial to him of unemployment benefits by the Vermont Employment Security Board. That body, after hearing, affirmed the denial of benefits by both its claims examiner and its appeals referee. The plaintiff then brought the matter to this Court under the provisions of 12 V.S.A. § 2382 *et seq.*

The issue central to this appeal is whether or not, within the definition of 21 V.S.A. § 1344, the plaintiff left his last employing unit voluntarily, without good cause attributable to that employer. The lack of good cause would disqualify the plaintiff for certain benefits, and it was on that ground that relief was in fact denied.

After the claims examiner turned down the original application for compensation payments the matter went to its first hearing before the appeals referee. Both the plaintiff and his employer appeared and gave evidence. From what was presented to him, the referee went on to make findings and issue his decision declaring the plaintiff disqualified for benefits.

For proper understanding, a review of those findings must include a description of the employment practices involved. The plaintiff is a carpenter and worked for the employer as a carpenter foreman. Although he was carried on the company books in the manner of an ordinary employee, with his social security, withholding and various other pay deductions handled by the company, he worked on what is described as a piecework basis. The employer would set a base or unit price

for a job, the plaintiff would assemble a crew, paid by the employer, and the job would be done. The difference between the wage cost for the crew and the unit price previously set went to the plaintiff as his compensation. It was often not quite as simple as it is described, but the procedure followed that general pattern.

Difficulty arose when the employer proposed to assign the plaintiff to a job involving the installation of aluminum siding. Most of the prior jobs had been concerned with erecting prefabricated camps and garages, although the plaintiff had also done other kinds of carpentry and masonry work for that employer. He had never worked on aluminum siding other than assisting in cornering that kind of siding on one job.

The appeals referee found that the job in question was offered to the plaintiff at the prevailing rate for aluminum siding work. After first agreeing to undertake the work, the plaintiff then refused on the basis that he not only would not profit from the job, but might be out of pocket. As a result of this disagreement, the plaintiff left his employment. The employer then hired another man, allegedly inexperienced, who did do the job and cleared approximately $6.00 an hour. While working for this employer, when an hourly rate was applicable, the plaintiff had accepted $5.00 an hour and, on occasion, less.

When the decision of the claims referee went against the plaintiff, he appealed to the employment security board. At that hearing the board allowed the plaintiff to put in what new evidence he chose, as authorized by 21 V.S.A. § 1349. The board also had before it the transcript of the evidence taken by the referee.

The board expressly adopted the findings of the referee and sustained his decision adverse to the plaintiff. In so doing, the board prefaced its findings with the following statement:

"We have reviewed the evidence taken before the Referee, his decision based on that evidence and the additional evidence taken before the Board, and upon review we find that there is sufficient evidence on which the Referee based the following Findings of Fact, and accord-

ingly they will stand as the Findings of Fact of the Board."

The plaintiff first faults the board for not properly carrying out its function under 21 V.S.A. § 1349. His position is that this statute contemplates a hearing *de novo,* which was not given, and which requires an independent evaluation of the evidence by the board. He claims that the board's reference to the "sufficient evidence" on which the referee's findings were based, demonstrates that the board did no more than perform an appellate function of testing the findings to see if they had any evidentiary support. This, he says, establishes that the board itself did not truly weigh any of the evidence.

■ The plaintiff places a heavy burden on the word "sufficient". His view is that, in a long line of cases, and in other contexts, phrases referring to the "sufficiency of the evidence" have achieved a kind of technical status representing a way of testing the findings of a judicial trier of fact upon appellate review. It might appear so. See, for example, *Guilmette* v. *Franklin Realty,* 127 Vt. 130, 135, 241 A.2d 323 (1968). Correctly, the test of the adequacy of the evidence to support the findings made by a trial court, on review by this Court, is more precisely stated as the presence on the record of "any credible evidence fairly and reasonably supporting them." *Crawford* v. *Lumberman's Mutual Casualty Co.,* 126 Vt. 12, 16, 220 A.2d 480 (1966). It is the "sufficiency" of the evidence to meet this test that is meant, and "sufficiency", in that context, becomes, in effect, a short-hand reference to the appropriate standard.

■ In fact, "sufficiency" performs the same function in the law with respect to other standards. Thus, the requirement that the evidence necessary to convict of a crime be "sufficient" beyond a reasonable doubt is referred to in *State* v. *Mecier,* 126 Vt. 260, 261, 227 A.2d 298 (1967). The "sufficiency" necessary in criminal prosecutions where circumstantial evidence is involved is stated as quite another standard. *State* v. *Bruce,* 126 Vt. 367, 369, 231 A.2d 107 (1967). Enough has been shown to demonstrate that the use of the word "sufficient" in describing the evidence underlying findings

does not *per se* establish the use of appellate court standards by the employment security board. Nor does it negate the presumption that that body properly performed its fact-finding duties. *Petition of Central Vermont Public Service Corp.*, 116 Vt. 206, 220, 71 A.2d 576 (1950).

■ The plaintiff argues that the design of the procedures for review by the board calls for a *de novo* hearing before that body. The applicable portion of 21 V.S.A. § 1349 says:

> "Such appeal shall be heard by the board after notice to the claimant and his last employer, within a reasonable time after notice of such appeal is filed, and the board may affirm, modify or reverse the decision of the referee solely on the basis of evidence in the record transferred to it by the referee, or upon the basis of evidence in such record and such additional evidence as it may direct to be taken. The commissioner on his own motion may initiate a review by the board of a decision of the referee or a benefit determination. The board shall make its findings of fact and conclusions thereon."

As can be seen, the board has the option of deciding the matter on the record of the evidence heard by the referee without more, or of supplementing that by hearing further evidence before arriving at its decision.

This is not just the same as a *de novo* proceeding as understood in Vermont law. The principal distinction is that the *de novo* characteristic relates to the taking of all testimony anew, disregarding the initial proceeding. See *Whitton* v. *Scott*, 120 Vt. 452, 457–58, 144 A.2d 706 (1958).

■ The statute at hand comprehends something in between that and the usual appellate review, since the board may evaluate evidence in record form, as well as receive direct testimony. The board has a clear duty to weigh the evidence before it, whether received from the witness stand or from a transcript of testimony. Adoption of the findings of fact of the referee, in the presence of an examination of the supporting record, is an appropriate and recognized way to fulfill this administrative responsibility and avoid the condemnation

of an improper "rubber-stamp" procedure. See *Hill* v. *District of Columbia Unemployment Comp. Bd.*, 279 A.2d 501, 503 (D.C. App. 1971). The statutory provisions contemplate and authorize such a procedure, and the board has properly complied with them.

 The plaintiff also contests the adequacy of the evidence in the case to support the findings of the referee and the board. His attack centers on the weight to be given to testimony and exhibits in the case. But this Court does apply the test of "sufficiency" appropriate to an appellate tribunal. The findings in this Court are to be affirmed if supported by credible evidence, even in the presence of substantial evidence to the contrary. *Massucco* v. *Vt. College Corp.*, 127 Vt. 254, 256, 247 A.2d 63 (1968). The record demonstrates such support.

*Judgment affirmed. Let the result be certified to the Employment Security Board.*