**Heloise H. Davis v. Department of Employment Security**

[438 A.2d 375]

No. 445-79

Present: **Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.**

Opinion Filed October 16, 1981

*Rexford, Kilmartin, Chimileski & White,* Newport, for Appellant.

*William T. Keefe,* Montpelier, for Appellee.

**Barney, C.J.** This case tests the adequacy of a physician's medical report to determine the disqualification status of a claimant for unemployment compensation under 21 V.S.A. § 1344(a), when she claims that she left her last employment because of a health condition which precluded the discharge of her normal duties. The Department of Employment Security, appellee here, accepted the report of the claimant's physician and disqualified Heloise Davis from receiving benefits for one week under 21 V.S.A. § 1344(a)(3), which requires that the health condition be "certified by a physician." Claimant Davis does not dispute that decision. The employer-appellant, however, claims that benefits should instead have been withheld until claimant had earnings in excess of six times her weekly benefit amount, under subsection (a)(2)(A), because

she left her employment voluntarily without good cause. We find the report at issue here sufficient to satisfy the statutory requirement and affirm the decision of the Employment Security Board.

Heloise Davis had taught school for ten years in the Town of Canaan, Vermont, when in December, 1977, her health began to deteriorate. A previously diagnosed diabetic, Davis began to suffer a host of disturbances which by the following spring had grown to include depression, crying "jags," hysteria, blurred vision, migraine headaches and exhaustion. She was placed on medication for the depression, continued the insulin she was already taking daily, and taught for the remainder of the school year, against the recommendation of her physician, but with his consent.

In April of 1978 Ms. Davis was offered, as was usual, a renewal contract to teach for the following school year. She was instructed to return the contract either signed or unsigned. Davis' physician advised her not to consider future employment until the end of the summer, and when school officials ruled out the possibility of a medical leave of absence, Davis returned the contract unsigned. She completed her teaching duties on June 15, 1978, and did not return to work in September. In November, after a number of months at home, she filed for unemployment benefits, stating that her physician had told her that she could now return to the duties of a teacher.

When Davis filed her claim for unemployment compensation, she was given a standard medical report form issued by the Department of Employment Security, to be completed and returned by her personal physician. The form was one page in length and consisted of ten questions, each of which the physician was to answer, if relevant, by filling in a blank space or checking "yes" or "no." He was alerted at the top of the page:

> TO EXAMINING PHYSICIAN: The information requested herein is necessary to, and will serve as basis for, determination of eligibility for unemployment benefits.

The questions, to which Davis' physician provided responses, covered the nature of her disability, the first and last dates on which he had seen her for the condition, and whether

Ms. Davis, in the physician's opinion, could perform her normal duties as a teacher on the first day she claimed incapacity, and on the effective date of the claim. Ms. Davis' physician stated that she suffered from poorly controlled diabetes and from depression, that he had followed her for this condition from 1974 to the present, and that as of June 15, 1978, she could not perform the duties of a teacher, but as of November 4, 1978, was once again able to do so. Space was provided for additional comment, which the physician chose to leave blank. The form was dated and signed.

As its first claim of error, the appellant contends that the medical report submitted by claimant's physician was not a physician's certificate within the meaning of 21 V.S.A. § 1344(a)(3). It maintains that, at a minimum, the statute requires the physician to testify that he knows (1) when the claimant left the employ of the last employing unit, and (2) that at the time the employee left, she left because of a health condition. Appellant further maintains that ideally the certificate should also include a statement that (3) the health condition for which the employee left her employment precluded the discharge of duties inherent in that employment. The statute contains none of these requirements. The plain language requires only that a physician *certify the health condition* asserted by the claimant.

Unemployment compensation laws are remedial in nature and are to be liberally construed to effectuate the rights accorded under them, *Willard* v. *Vermont Unemployment Compensation Commission*, 122 Vt. 398, 399, 173 A.2d 843, 845 (1961). The underlying purposes are to remove economic disabilities and distress resulting from involuntary unemployment, *In re Potvin*, 132 Vt. 14, 313 A.2d 25 (1973), and to assist those workers who become jobless for reasons beyond their control, *Schneider* v. *Vermont Employment Security Board*, 133 Vt. 187, 333 A.2d 104 (1975). To "certify" means to "authenticate or vouch for a thing in writing. To attest as being true or as represented." Black's Law Dictionary 207 (5th ed. 1979); 14 C.J.S. 114. A medical report, signed by a physician, is authenticated; once so authenticated, the opinion constitutes a certificate. *Rector* v. *F. J. O'Hara & Sons, Inc.*, 222 A.2d 243, 244-45 (Me. 1966). Absent statutory provision

declaring a particular form of certification, any form which affirms the fact in writing is sufficient. *In re Kostohris' Estate,* 96 Mont. 226, 237, 29 P.2d 829, 834 (1934); *State ex rel. Scotten* v. *Brill,* 58 Minn. 152, 156, 59 N.W. 989, 990–91 (1894); *State* v. *Schwin,* 65 Wis. 207, 213, 26 N.W. 568, 570 (1886).

Appellant also claims error in the introduction of the physician's report into evidence. Although it admits that proceedings of the Employment Security Board are not bound by common law or statutory rules of evidence, or by technical or formal rules of procedure except as otherwise provided by statute, 21 V.S.A. § 1351, appellant nevertheless contends that its right to a fair hearing was violated because the report contained irrelevant and immaterial statements and was not of a type commonly relied on.

The Employment Security Board is required to conduct hearings in such a manner as to ascertain the substantial rights of the parties, and this standard prevails over the admissibility of documentary evidence when an administrative proceeding is reviewed. *Longe* v. *Department of Employment Security,* 135 Vt. 460, 380 A.2d 76 (1977). The claimant and/or any other interested party may present such evidence as may be pertinent, under Rule 16(L) of the Vermont Employment Security Board, 21 Vt. Reg. Ann. 957 (Fox 1980), *cited in Dague* v. *Department of Employment Security,* 138 Vt. 57, 412 A.2d 706 (1980). The medical report at issue here, though brief, answers all essential questions and contains no extraneous information. Its allowance into evidence does not even hint at an abuse of discretion by the Board.

The substance of appellant's third claim of error is that the physician's report did not satisfy the substantive evidentiary requirements of the disqualification statute because it failed to state a causal connection between the claimant's health condition and the preclusion of the discharge of her normal employment duties. This claim is without merit. Question 6a on the medical report asks, "In your opinion, could this individual perform on a full time basis, the normal duties of a Teacher (French) as of 6/15/78. . . ." Following the question Ms. Davis' physician unequivocally checked "No." Furthermore, while it is true that the connection between the

disability and the unemployability must be found before a claimant can be classified and her correct benefit status determined, it is neither required by law nor appropriate that this finding be made by the claimant's physician. It is the Department, not the physician, which is charged with passing on the claim under 21 V.S.A. § 1348, and the evaluation of all factors surrounding the claim is properly within the Department's expertise.

In the balance of its claims of error the appellant contends that the evidence in the record, taken as a whole, does not establish or support the Board's conclusions as a matter of law. It charges the Board with an abuse of discretion, and with abuse of its fact finding function. Specifically it claims that the evidence does not establish that Ms. Davis terminated her employment because of a health condition, or that the health condition precluded her from discharging the duties of that employment.

The appellant emphasizes the fact that the claimant's physician did not *order* her to stop working. It contends that the decision not to sign the renewal contract was Davis' decision alone, and that in making it Davis took it upon herself to voluntarily reject future employment because she wanted a year off.

While we have never considered the extent to which a physician must demand of his patient that she quit her employment before the statutory standard is satisfied, we find the reasoning of the Pennsylvania Supreme Court in *Deiss* v. *Unemployment Compensation Board of Review*, 475 Pa. 547, 381 A.2d 132 (1977), persuasive on the point. We accordingly hold that where a claimant for unemployment compensation finds that due to a health condition she is unable to continue working, and offers competent testimony that at the time she stopped working adequate health reasons existed to justify terminating the employment, there is no reason to require proof that she was ordered to quit the employment by a physician.

The Employment Security Board has the option at all times of deciding a matter on the record of the evidence heard by the referee, or of supplementing that record by hearing further evidence on its own, 21 V.S.A. §§ 1332, 1349.

The findings of the Board are to be affirmed if supported by credible evidence, even in the presence of substantial evidence to the contrary. *In re Wheelock,* 130 Vt. 136, 287 A.2d 569 (1972). Here the Employment Security Board specifically found that, although claimant continued to perform her teaching duties, her health was gradually deteriorating. It found this deterioration due in large part to the pressures inherent in the teaching position, to a point where Ms. Davis was precluded by her health from performing any longer as a teacher. There is no requirement that the health condition which precludes a claimant's discharge of employment duties under 21 V.S.A. § 1344(a)(3) be unrelated to, or not the result of aggravation by, job factors.

Over the course of this three year litigation, three separate hearings were held at the Board level to explore the underlying facts of this case, and assure that the substantial rights of the parties were correctly ascertained. This record contains ample testimony and documentation from which it can be found that the claimant suffered from health problems so severe that they prevented her from performing her regular duties as a teacher. No more was required by way of evidence to support the findings. The findings, in turn, amply justifying the decision, we must, as a matter of law, validate the Board's determination.

*Judgment affirmed.*