## Dennis Favreau v. Department of Employment and Training

[594 A.2d 440]

No. 90-366

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 31, 1991

*Alexander Scherr*, Vermont Legal Aid, Inc., St. Johnsbury, for Plaintiff-Appellant.

*Brooke Pearson*, Montpelier, for Defendant-Appellee.

**Gibson, J.** Claimant appeals from a decision of the Employment Security Board disqualifying him from unemployment

benefits following the conclusion of his employment with the Newport Furniture Parts Corporation. The Department's chief claims adjudicator granted benefits to claimant, finding that he had left his employment due to a health condition. The appeals referee reversed that decision, however, and the Board affirmed the referee's decision. We affirm the Board's decision.

Claimant was employed from February 1987 through mid-August 1989 as a sealer-sander at the employer's Newport plant. At the time he left, claimant was suffering from an "adjustment disorder with mixed emotional features." He was receiving counseling from a vocational support specialist at Northeast Kingdom Mental Health (NKMH), and the employer was aware of his condition. Over the course of the employment, claimant brought certain work-related problems to the attention of his support specialist at NKMH, and she intervened from time to time with the employer on his behalf. In March 1989, the employer's representatives advised the specialist that they had observed severe personality problems with claimant, that he was disruptive, that he complained to other employees and started rumors, and that his productivity was low. Almost immediately, the specialist began helping claimant develop a resume and start a search for a new job.

Claimant had physical as well as emotional difficulties. In late 1988, the employer's production method changed to a piecework system, and claimant was given a goal of twelve chairs per hour, which he had some difficulty meeting. He suffered raw and bleeding hands, for which the employer provided gloves. He was also given a variety of wristbands to deal with wrist pain.

Despite the problems, in May 1989 claimant informed the specialist at NKMH that "he felt it [the job] was going O.K.," though at that time he was looking for other employment. He gave the specialist similar job assessments in June and July, 1989. It is clear from the testimony, however, that the shift to piecework had created additional stress and pressure on claimant and that he was having difficulty coping. Shortly before claimant handed in a written resignation, his supervisors criticized his job performance, after which claimant submitted the following letter, dated August 8, 1989, to the employer:

> This is to inform you that August 18th will be my last day of employment here. I'm sorry if my work was unsatisfactory. I've decided to step aside so you can find somebody else. I learned a lot from this job, enough to help me find another job later on down the road. Thank you for your patience and the training I received.

Claimant's last day of work was August 18, 1989. On August 25, 1989, claimant was examined for the first time by a physician, who certified on September 1, 1989 that the "pt has undiagnosed L arm/wrist condition neuro app." On the certification form, the physician responded "no" to whether claimant could perform the normal duties of his job as of the first workday his incapacitation was declared and "yes" to whether he could do so as of the effective date of his claim for unemployment benefits, which the referee noted was August 19, 1989. The form contained no information relating either to the nature of claimant's disability or the duties and physical requirements of his last job.

In addition to the physical symptoms, claimant contended—as a separate justification for his decision to leave the job—that he was systematically persecuted by his immediate supervisor because of his religious beliefs and practices. The appeals referee found that "[t]here were, in fact, some incidents of bantering about religious subjects, some initiated by a supervisor and some by the claimant."

The appeals referee concluded that claimant had left his employment voluntarily, without good cause attributable to the employer, and not because of a health condition precluding him from discharging duties inherent in his employment. The referee cited the text of claimant's letter, which referred neither to a medical problem nor a "work-related situation such as religious persecution," his previous search for other employment, the inadequacy of the medical certification of claimant's problems, and the lack of evidence that "the asserted incapacitating condition . . . [related] directly to an inability to perform duties inherent in the employment."

The referee acknowledged claimant's emotional problems but found that, while the August 8, 1989 meeting with his supervisors was "extremely stressful for him," the evidence did not support a conclusion that "claimant could not, with some effort,

have resolved his problems at work in a satisfactory way, or that such efforts would have been unavailing." The referee dismissed as unconvincing the alleged religious harassment as grounds for claimant's departure from the employment.

After a hearing on the record below, the Board adopted the referee's findings and added its own finding that, when claimant filed his additional claim for benefits on August 21, 1989, he had indicated on the claim form that his reason for separation was a "voluntary leaving" and did not check the box marked "medical." The Board concluded that, with respect to his physical and emotional problems, claimant "simply failed to demonstrate that either health condition was the real reason for his abrupt quitting of his job." The Board cited his August 8, 1989 letter and a fact-finding statement, completed some ten days after he had left the job, in which claimant provided a narrative explanation for his quitting, reciting medical problems, but not stating that these conditions precluded his being able to do his job. The Board also found that claimant's testimony before the appeals referee failed to support the theory that his departure had been motivated by medical conditions. The Board concluded that claimant "quit his job in a moment of anger and out of frustration over his employer's criticism of his work." With respect to claimant's argument that he had left the job because of religious harassment, the Board concluded that claimant had not proved that his quitting was related to good cause attributable to the employer. The present appeal followed.*

Claimant argues that the medical report form contained information sufficient to establish the present claim. He maintains that the report was on a standard form virtually identical to that held to be adequate in *Davis v. Department of Employment Security*, 140 Vt. 269, 438 A.2d 375 (1981), where we held that no particular form is necessary to satisfy the requirement of a physician's certificate under 21 V.S.A. § 1344(a)(3). *Id.* at 273–74, 438 A.2d at 378.

---

* The Board did not adopt an additional ground for denial of benefits advanced by the referee, namely, that claimant was obligated to notify the employer in advance of a health condition causing the claimant to leave the job. Claimant nevertheless argues the point on appeal, and the Department agrees that the referee was incorrect in this aspect of his decision. As the Board did not base its decision on this ground, the issue is not before us.

*Davis*, however, does not establish that the filing of a document by a physician is dispositive of whether a claimant has left his last employment because of a health condition. In *Davis*, we held that the physician's statement did not have to deal with facts collateral to the medical statement, such as, when the claimant left his or her employment, whether she or he left because of a health condition, or whether the health condition precluded discharging duties inherent in that employment. *Id.* at 273, 438 A.2d at 378. Although *Davis* establishes that the required medical certificate need not adhere to a particular form, it does not stand for the proposition that, once filed, the certificate ends the inquiry as to why a claimant left an employment.

In the instant case, the medical certificate contained virtually no information indicating that claimant had a medical condition that "preclude[d] the discharge of duties inherent in such employment" within the meaning of § 1344(a)(3). Moreover, other evidence, including claimant's letter of resignation, his August 29, 1989 fact-finding statement, and his testimony before the referee, all weighed against the conclusion that claimant left his employment for health-related reasons.

On appeal, claimant emphasizes his own version of events, stressing evidence supporting his contention that he left the employment for medical reasons. For example, claimant argues that he "and his attending psychiatric social worker testified that he was and had been consistently impaired by his emotional condition from at least late July onwards. Indeed, his worker . . . testified that the primary reason for his quit lay in his inability to cope with the stress of his physical condition and his job, because of his psychiatric condition."

The referee and the Board, however, concluded that on balance the evidence demonstrated that claimant left his employment for other than health-related reasons. The Board conceded that there was abundant evidence that claimant had physical and mental problems, but, on the crucial question of why he left his employment, the Board concluded that claimant's evidence was insufficient to demonstrate either that medical conditions caused his departure from the job or that they would have precluded him from discharging the duties inherent in the job.

 Our function on appeal is not to weigh the evidence anew as a trier of fact but to determine if the Board's findings and conclusions are supported by credible evidence. *In re Wheelock*, 130 Vt. 136, 139, 287 A.2d 569, 571 (1972). There is ample evidence on the record supporting the Board's findings and conclusions. Accordingly, the Board's decision will not be disturbed.

*Affirmed.*